Angeles Ramonita GARCIA, Appellee,

v.

Kenneth R. NEAGLE, Warden, F. C. I. Alderson, and United States Parole Commission, Appellants.

No. 80–6585.

United States Court of Appeals, Fourth Circuit.

Argued July 17, 1981.

Decided Sept. 21, 1981.

Certiorari Denied Jan. 11, 1982.
See 102 S.Ct. 1023.

---

Michael A. Stover, U. S. Parole Commission, Washington, D. C. (Robert B. King, U. S. Atty., J. Timothy DiPiero, Asst. U. S. Atty., Charleston, W. Va., on brief), for appellants.

Jeffrey S. Saltz, Philadelphia, Pa., for appellee.

Before PHILLIPS, MURNAGHAN and ERVIN, Circuit Judges.

JAMES DICKSON · PHILLIPS, Circuit Judge:

The United States Parole Commission (Commission) appeals from an order of the district court requiring the Commission to give Angeles Ramonita Garcia a new parole hearing because the parole guidelines used by the Commission are invalid and their application violative of her right to due process. The Commission also appeals from the court's further order releasing Mrs. Garcia from custody, following the Commission's refusal to conduct a new hearing. We reverse. We hold that the district court exceeded its powers under the Parole Commission and Reorganization Act (the Parole Act), 18 U.S.C. § 4201 et seq., in reviewing the Commission's determination for abuse of discretion. We further hold that the Commission did not—as the district court concluded—violate its statutory mandate in promulgating the guidelines so as to emphasize the offense rather than the sentence imposed in making parole determinations nor in categorizing large-scale fraud offenses in the same category with violent crimes.

## I

In 1977, Mrs. Garcia was a 64-year-old resident of Puerto Rico who operated a beautician's training school in San Juan. She was charged in the United States District Court for the District of Puerto Rico with falsifying the attendance records of certain of her students in order to receive from the Veterans' Administration tuition payments to which her school was not entitled. The amount of money allegedly expropriated exceeded $500,000.[1]

As the result of a plea agreement, Mrs. Garcia pleaded guilty to three counts of the indictment against her: mail fraud, 18 U.S.C. § 1341, making false statements to the United States Government, id. §§ 1001, 1002, and conspiracy to defraud the United States Government, id. § 371. The district judge in Puerto Rico accepted her guilty plea and subsequently sentenced her to terms of five years on each count, the maximum penalty for the offenses charged, and a fine of $21,000, but ordered that the sentences be served concurrently.

After sentencing, Mrs. Garcia was incarcerated at F.C.I. Alderson, West Virginia. In November 1978, the Commission conducted her initial parole hearing and thereafter granted her a presumptive parole date of March 31, 1981, at which time she would have served two-thirds of her sentence. The Commission arrived at this date by applying the guidelines promulgated pursu-

---

1. At sentencing the Government alleged that Mrs. Garcia had defrauded the Veterans' Administration of $900,000. The defense attorney did not object to this statement but stated that his client had offered restitution in the amount of $100,000. *United States v. Garcia*, 501 F.Supp. 472, 482, 484 (App. B) (D.P.R.1980).

The exact amount defrauded has never been established, but Mrs. Garcia has been held liable in a civil suit for $600,000 in "partial judgment." *United States v. Garcia*, Civ.No. 76–1417 (D.P.R., Jan. 16, 1978), aff'd No. 79–1174 (1st Cir., Dec. 4, 1979).

ant to the Parole Act. 28 C.F.R. § 2.20. These guidelines match offense severity with a quantified prediction of parole success ("salient factor score"). Mrs. Garcia's offenses were rated "Greatest I,"[2] the sixth highest of seven levels, but her salient factor score was 11, the most favorable possible. The guideline range for this combination was 40 to 52 months. Not finding any justification for making a parole decision outside the guideline, the Commission set a presumptive parole date 40 months into her sentence, March 3, 1981. A statutory interim hearing was set for May 1980.

In May 1979, Mrs. Garcia filed a petition, soon followed by a first supplement, for a writ of habeas corpus under 28 U.S.C. § 2255 in the United States District Court for the Southern District of West Virginia. In this petition she alleged that her plea of guilty had been involuntarily entered, that her trial counsel had been ineffective, and that she had never been apprised of her right to appeal. Later she filed a second supplement alleging that the sentencing court had violated Rule 11 of the Federal Rules of Criminal Procedure by failing to inform her of the policies of the Commission, and that the decision of the Commission to deny her parole until 40 months had been served was illegal. She contended, alleging 28 U.S.C. § 2241 as an additional basis for jurisdiction, that the parole guidelines usurp both judicial and legislative functions by nullifying the discretion of the sentencing court in imposing individual sentences and by denying prisoners the individualized consideration required in the Parole Act.

In January 1980, the habeas court in West Virginia transferred the original petition and first supplement to the United States District Court for the District of Puerto Rico, and ordered the Commission to file in the West Virginia court a responsive pleading to all the issues raised in the second supplemental petition, including the alleged violation of Rule 11 by the sentencing court. The court also ordered Mrs. Garcia to file in the West Virginia court an amended pleading in the form of a petition for declaratory relief naming the Commission as defendant.

The district court then held that the Commission had both violated the Parole Act and abused its discretion in denying Mrs. Garcia parole until two-thirds of her sentence had been served.[3] Specifically, the

---

**2.** Although the particular offenses to which Mrs. Garcia pleaded guilty are not listed in the Commission's guidelines, the Commission categorized her offenses as "Greatest I." The specific offenses listed as examples under this category are:

Aggravated felony (e. g., robbery: weapon fired or injury of a type normally requiring medical attention).

Arson or explosive detonation [involving potential risk of physical injury to person(s) (e. g., premises occupied or likely to be occupied)—no serious injury occurred].

Drugs (other than specifically listed), possession with intent to distribute/sale [managerial or proprietary interest and very large scale (e. g., offense involving more than 200,000 doses)].

Cocaine, possession with intent to distribute/sale [managerial or proprietary interest and very large scale (e. g., offense involving more than 1 kilogram of 100% purity, or equivalent amount)].

Opiates, possession with intent to distribute/sale [managerial or proprietary interest and very large scale (e. g., offense involving more than 50 grams of 100% pure heroin, or equivalent amount)].

Kidnapping [other than listed in Greatest II; limited duration; and no harm to victim (e. g., kidnapping the driver of a truck during a hijacking, driving him to a secluded location, and releasing victim unharmed)].

Robbery (3 or 4 instances).

Sex act—force [e. g., forcible rape or Mann Act (force)].

Voluntary manslaughter (unlawful killing of a human being without malice; sudden quarrel or heat of passion).

28 C.F.R. § 2.20.

The Commission categorized Mrs. Garcia's offenses in this category because the monetary amount exceeded $500,000. The next highest category was specified to include property offenses involving amounts not exceeding $500,000.

**3.** Under the Parole Act, a prisoner serving a definite term of more than one year is eligible for parole after one-third of the sentence has been served, 18 U.S.C. § 4205(a), and, when serving five or more years, normally must be released by the two-thirds point. *Id.* § 4206(d). See discussion in Part II.B. *infra*.

court found that the categorization of her offense in the "Greatest I" category solely because of the monetary amount of the fraud and the use of an amount not judicially determined violated the language and spirit of the statute, denying her the individualized consideration required by 18 U.S.C. § 4206(a). Such action, in the court's view, was "a complete abrogation by the Commission of its mandate from Congress [shocking to] the conscience of the court." The court declined to address the issue whether the Commission guidelines usurp the legislative and judicial powers. Although the court did apparently find that the sentencing court had violated due process by failing to inform Mrs. Garcia of the Commission's parole policies prior to accepting her guilty plea, the court stayed resolution of the Rule 11 issue pending its consideration by the sentencing court.

On appeal, the Commission argues that there is no statutory or constitutional prohibition against rating a nonviolent fraud offense involving a large sum in the same guideline category with offenses involving possible injury to human life. Further, the Commission argues that the district court exceeded the proper scope of judicial review available under the Parole Act and improperly substituted its judgment for that of the Commission.

In support of the district court's action, Mrs. Garcia argues that the Commission violated the statutory mandate in failing to consider, as a starting point, the sentence imposed by the sentencing court. Further, she asserts that the action of the Commission in denying her parole was "arbitrary and irrational . . . and cannot survive judicial review, under any standard of scrutiny applicable."

## II

We address as dispositive two distinct questions: whether the Commission's action in categorizing Mrs. Garcia's offense in the "Greatest I" category on the basis of an unverified monetary amount, thus requiring her to serve the longest sentence permitted by law when her status as a model prisoner was undisputed, is subject to judicial review for abuse of discretion; and second, wheth-

er the parole guidelines fail to provide for individualized parole determinations and thus violate the Parole Act, either because they allow classification of offense severity for property offenses solely on the basis of monetary amount or because they fail to direct the Commission to begin its evaluation with reference to the prisoner's sentence.

### A.

 Our first inquiry is to determine the extent to which these actions of the Commission in promulgating and in applying the guidelines are subject to judicial review. The presumption is, of course, that judicial review is available to an individual aggrieved by final agency action, so long as no statute precludes review or the action is not one "committed by law to agency discretion." *Abbott Laboratories v. Gardner,* 387 U.S. 136, 140, 87 S.Ct. 1507, 1510, 18 L.Ed.2d 681 (1967) (citing 5 U.S.C. § 701(a)); *see Barlow v. Collins,* 397 U.S. 159, 166–67, 90 S.Ct. 832, 837–38, 25 L.Ed.2d 192 (1970); *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 156–57, 90 S.Ct. 827, 831, 25 L.Ed.2d 184 (1970). Where review is precluded by statute or where Congress has "committed the challenged action entirely to administrative discretion, judicial review may not be available." *Barlow v. Collins,* 397 U.S. at 165, 87 S.Ct. at 836; *Morris v. Gressette,* 432 U.S. 491, 500–01, 97 S.Ct. 2411, 2418, 53 L.Ed.2d 506 (1977).

 Whether judicial review may be available in any particular instance requires more than a mechanical application of this general rule. Although courts must respect congressional intent that certain aspects of agency decisionmaking be left wholly to administrative discretion, *see Ferry v. Udall,* 336 F.2d 706 (9th Cir. 1964), the exception to judicial review is a narrow one. *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971). Inquiry properly runs to the question for which review is sought and to congressional intent with regard to judicial review as it relates to that

question. *Ness Investment Corp. v. United States Department of Agriculture*, 512 F.2d 706, 714 (9th Cir. 1975); *cf. Johnson v. Robison*, 415 U.S. 361, 366–74, 94 S.Ct. 1160, 1165–69, 39 L.Ed.2d 389 (1974) (statute declaring that the decisions of the Administrator of the Veterans' Administration were not reviewable by any other official or any court not intended by Congress to preclude judicial consideration of constitutional challenges to veterans' benefits legislation).

■ In general, even where action is committed to absolute agency discretion by law, courts have assumed the power to review allegations that an agency exceeded its legal authority, acted unconstitutionally, or failed to follow its own regulations. *Ness Investment Corp. v. United States Department of Agriculture*, 512 F.2d at 714; *Scanwell Laboratories, Inc. v. Shaffer*, 424 F.2d 859, 874 (D.C.Cir.1970). As the District of Columbia Circuit has observed, "[w]hen the bounds of discretion give way to the stricter boundaries of law, administrative discretion gives way to judicial review." *Scanwell Laboratories, Inc. v. Shaffer*, 424 F.2d at 874 (footnote omitted). Where the controlling statute indicates that particular agency action is committed to agency discretion, a court may review the action if there is a claim that the agency has violated constitutional, statutory, regulatory or other restrictions, but may not review agency action where the challenge is only to the decision itself. *Ness Investment*

*Corp. v. United States Department of Agriculture*, 512 F.2d at 715.

■ Mrs. Garcia complains of the Commission's decision not to grant her parole until two-thirds of her sentence had been served. In unmistakable terms, the Parole Act specifically commits the decision to grant or deny parole to the unreviewable discretion of the Parole Commission.[4] 18 U.S.C. § 4218(d); *see Portley v. Grossman*, 444 U.S. 1311, 1312, 100 S.Ct. 714, 715, 62 L.Ed.2d 723 (1980). Under the applicable law, the district court was therefore without power to engage in judicial review of the Commission's substantive decision to set Mrs. Garcia's presumptive parole date at 40 months under an abuse of discretion standard. Congress clearly intended to commit these substantive decisions to the absolute discretion of the Commission.[5] *Luther v. Molina*, 627 F.2d 71, 75–76 (7th Cir. 1980); *Smaldone v. United States*, 458 F.Supp. 1000, 1004 (D.Kan.1978).

■ This statutory restriction does not preclude either the district court or this court, however, from considering a claim that the guidelines for exercising discretion, as promulgated and applied, violate the intent and directives of the Parole Act. Such an inquiry into the *legality* of agency action, as opposed to its appropriateness within legal bounds, is "uniquely appropriate for judicial determination." *Scanwell Laboratories, Inc. v. Shaffer*, 424 F.2d at 875. The

---

4. 18 U.S.C. § 4218(d) provides: "Actions of the Commission pursuant to paragraphs (1), (2), and (3) of section 4203(b) shall be considered actions committed to agency discretion for purposes of section 701(a)(2) of title 5, United States Code."

Section 4203(b)(1) provides: "(b) The Commission, by majority vote, and pursuant to the procedures set out in this chapter, shall have the power to—

(1) grant or deny an application or recommendation to parole any eligible prisoner;

. . . .

Section 701(a) of title 5 states: "(a) This chapter [the judicial review provisions of the Administrative Procedure Act] applies, according to the provisions thereof, except to the extent that—

(1) statutes preclude judicial review

(2) agency action is committed to agency discretion by law.

5. The legislative history of the 1976 Parole Commission and Reorganization Act substantiates the clear language of the statute: "It is the intent of the Conferees that the Parole Commission make certain judgments pursuant to this section, and that the substance of those judgments is committed to the discretion of the Commission." H.R.Conf.Rep.No.94–838, 94th Cong., 2d Sess. 25, *reprinted in* [1976] U.S.Code Cong. & Ad.News 351, 358. In making individual parole decisions, the Commission must "weigh the concepts of general and special deterrence, retribution and punishment, all of which are matters of judgment," and apply the statutory criteria in a manner consistent with findings in other parole decisions. *Id.* Such consistency is possible only with an insulation of its decisions, within the confines of the discretion granted by statute, from judicial review.

commitment of substantive parole determinations to the absolute discretion of the Commission does not insulate from judicial review a challenge to the very legality of the guidelines or their application, *i. e.*, to whether the Commission acted completely outside the scope of the discretion given it by Congress.

▆ Therefore, to the extent that the district court . found that the Commission abused the discretion granted by statute, the court exceeded the scope of review permitted under the Parole Act and acted beyond its jurisdiction. To the extent that the court found the Commission's action to be in violation of the statutory mandate, its exercise of jurisdiction was proper, but its action is of course in turn subject to review by this court for error of law.

### B.

We consider then whether, as the district court held, the guidelines or their application in this sense violated the Parole Act, that is, whether the Commission acted *outside* the scope of absolute discretion granted by Congress.[6] As indicated, we have concluded that the district court erred in this holding.

The Parole Act directs the Commission to promulgate rules and regulations establishing guidelines for making individual parole decisions and establishing a national parole policy. 18 U.S.C. § 4203(a). A prisoner serving a definite term or terms of more than one year is to be eligible for parole after serving one-third of the term. *Id.* § 4205(a). Prisoners serving for five or more years must be released after serving two-thirds of the sentence, except under certain extreme conditions. *Id.* § 4206(d).

The Act also sets forth the general criteria to be used in parole determinations:

§ 4206. Parole determination criteria

(a) If an eligible prisoner has substantially observed the rules of the institution or institutions to which he has been con-

fined, and if the Commission, upon consideration of the nature and circumstances of the offense and the history and characteristics of the prisoner, determines:

(1) that release would not depreciate the seriousness of his offense or promote disrespect for the law; and

(2) that release would not jeopardize the public welfare;

. . . pursuant to guidelines promulgated by the Commission pursuant to section 4203(a)(1), such prisoner shall be released.

The Commission has promulgated guidelines pursuant to § 4203(a), incorporating the criteria in § 4206(a). 28 C.F.R. § 2.20. Subsection (b) of the guidelines states:

(b) These guidelines indicate the customary range of time to be served before release for various combinations of offense (severity) and offender (parole prognosis) characteristics. The time ranges specified by the guidelines are established specifically for cases with good institutional adjustment and program progress.

Offense severity is categorized in seven levels, ranging from "Low" to "Greatest II," which contain examples of offenses categorized at each level. The Commission here rated Mrs. Garcia's offenses in the "Greatest I" category. Parole prognosis is measured by "salient factor score," a seven item evaluation yielding a possible score of 11 points. Mrs. Garcia earned the full 11 points. The guidelines then integrate these two factors on a grid where four ranges of salient factor scores (very good (11–9), good (8–6), fair (5–4), poor (3–0)) suggest a range of time to be served before release for each level of severity. For Mrs. Garcia, the range was 40 to 52 months. The Commission thus set Mrs. Garcia's presumptive parole date at 40 months—the minimum time indicated by the guidelines and, coincidentally, the time she would by law have had to be released, after serving two thirds of her sentence. *See* 18 U.S.C. § 4206(d).

---

**6.** The district court apparently also rested its holding on a violation of due process. The court does not explain the source or substance of the constitutional right violated as it relates to the action of the Commission in promulgat-

ing or applying the parole guidelines. We find no basis for concluding that there was a violation of procedural or substantive due process. Mrs. Garcia does not press this ground for affirmance on appeal.

The district court objected to what, in its view, was a manifest injustice: with an offense severity classification so high, even with her perfect salient factor score Mrs. Garcia could not be released on parole until the time she would by law have been freed. The court thus determined that using the monetary amount involved in a property crime as the sole criterion in determining offense severity "serves to do grievous damage to the Congressional mandate to consider the 'nature and circumstances of the offense.'" Because Congress anticipated much broader consideration of a particular offense and mandated individualized consideration, "[a] Commission guideline category which is based solely on the monetary amount involved is facially violative of both the language and spirit of the statute . . . ."

Mrs. Garcia's particular offense—fraudulent activity involving more than $500,000 [7]—is not specifically categorized. "Property offenses" [8] less than $2,000 are "Low" severity; $2,000 to $19,999, "Moderate"; $20,000 to $100,000, "High"; and "more than $100,000 but not exceeding $500,000," "Very High." "Greatest I" and "Greatest II" do not contain property offense examples. Presumably determining that Mrs. Garcia's offense should be in the next category above "Very High" and following the general notes of the guidelines,[9] the Commission rated Mrs. Garcia's offenses in the "Greatest I" category.

We cannot agree with the district court's conclusion that using monetary amount in this way took the Commission outside the scope of the discretion given it by Congress. There is simply no basis in the Parole Act or in logic for the notion that fraudulent crimes are not made more serious by the amount of money involved. Although the "Greatest I" category only gives as examples crimes which involve potential harm to human life—large scale drug crimes, arson, sex crimes, kidnapping, aggravated felony and robbery, see n.2 supra—this alone is not determinative. The Commission is directed to determine that release would "not depreciate the seriousness of his offense or promote disrespect for the law" before granting parole. 18 U.S.C. § 4206(a)(1). A rating scheme for fraud offenses taking account of monetary amount surely implements the statutory mandate. Violence or potential harm alone does not determine the seriousness of a crime nor the strength of society's interest in deterrence and punishment, Rummel v. Estelle, 445 U.S. 263, 275, 100 S.Ct. 1133, 1139, 63 L.Ed.2d 382 (1980), and there is nothing in the Parole Act which indicates that Congress thought otherwise in making its grant of discretion.

On appeal, Mrs. Garcia presses additionally the claim that the guidelines violate the intent of the Parole Act by failing to refer each parole decision to the individual sentence. Had she been given the kind of individualized treatment envisioned by the Parole Act, her perfect salient factor score should have had some discernible impact on her presumptive parole date. In other words, had the Commission begun its evaluation with the sentence she was actually serving, her perfect salient factor score should have operated to entitle her to release earlier than the point at which she by statutory directive would have been re-

---

7. There has been no judicial determination of the amount of the fraud. See n.1 supra. That Mrs. Garcia has been held civilly liable for $600,000 restitution is sufficient to support a categorization of greater than $500,000. There has, therefore, been no failure to follow the guidelines.

8. The guidelines describe "property offense" as including theft, forgery, fraud, embezzlement, interstate transportation of stolen or forged securities, income tax evasion, and receiving stolen property. 28 C.F.R. § 2.20.

9. The relevant notes read:

GENERAL NOTES

B. If an offense behavior is not listed above, the proper category may be obtained by comparing the severity of the offense behavior with those of similar offense behaviors listed.

C. If an offense behavior can be classified under more than one category, the most serious applicable category is to be used.

D. If an offense behavior involved multiple separate offenses, the severity level may be increased.

leased. That it did not evince a failure to follow Congressional intent in exercising discretionary power. We disagree.

■ Of course, the Commission is required to *consider* parole at the one-third point and in most instances *must* release prisoners serving five or more years at the two-thirds mark. These boundaries generally define the limits of discretion in temporal terms. But within these broad outer limits of discretion, the Commission is directed to set up a parole policy which considers only two factors: "the nature and circumstances of the offense and the history and characteristics of the prisoner." 18 U.S.C. § 4206(a).

■ We find no indication in the language of the Parole Act or in the legislative history that Congress intended the sentence to be the central framework for parole decision. It serves to define the outer limits of parole eligibility, but offense severity and offender characteristics are the touchstones for parole determination. 18 U.S.C. § 4206(a). The Supreme Court, in fact, describes the parole process as intended, in part, to balance sentencing differences:

> The decision as to when a lawfully sentenced defendant shall actually be released has been committed by Congress, with certain limitations, to the discretion of the Parole Commission. Whether wisely or not, Congress has decided that the Commission is in the best position to determine when release is appropriate, and in doing so, to moderate the disparities in the sentencing practices of individual judges.

*United States v. Addonizio,* 442 U.S. 178, 188–89, 99 S.Ct. 2235, 2241–42, 60 L.Ed.2d 805 (1979) (footnotes omitted); *see* H.R. Conf.Rep.No.94–838, *supra* n.5, at 19, [1976] U.S.Code Cong. & Ad.News at 352.

■ Although the Parole Act envisions that parole decisions are to be individualized, they are nevertheless to be made according to established guidelines. 18 U.S.C. § 4206(a). In fact, § 4206(c) allows a parole determination outside the guidelines only

for good cause. The House Conference Report clearly states:

> It is the intent of the Conferees that the guidelines serve as a national parole policy which seeks to achieve both equity between individual cases and a uniform measure of justice....

> ... [Section 4206] permits the Commission to grant or deny parole notwithstanding the guidelines only when the Commission has determined that there is good cause to do so ....

> ... If decisions to go above or below parole guidelines are frequent, the Commission should reevaluate its guidelines.

H.R.Conf.Rep.No.94–838, *supra* n.5, at 26–27, [1976] U.S.Code Cong. & Ad.News 359–60. We respectfully disagree with the position of the Third Circuit in *Geraghty v. United States Parole Commission,* 579 F.2d 238 (3d Cir. 1978), that the presumptive application of the guidelines to each case and the secondary importance of the sentence violate the Parole Act. *See Priore v. Nelson,* 626 F.2d 211 (2d Cir. 1980); *Moore v. Nelson,* 611 F.2d 434 (2d Cir. 1979). We conclude instead that a failure to proceed in this way would raise a serious question as to whether the Commission had followed legislative intent.

Therefore, because the parole guidelines as enacted or applied violate no constitutional or statutory rights, we reverse the decision of the district court and remand for action consistent with this opinion.

*REVERSED AND REMANDED.*