**Paul KIRK**

v.

**Warden WHITE, et al.**

**Civ. A. No. 85–0697–R.**

United States District Court,
E.D. Virginia,
Richmond Division.

Jan. 15, 1986.

Paul Kirk, pro se.

G. Wingate Grant, Asst. U.S. Atty., Richmond, Va., for respondents.

## OPINION AND ORDER

WARRINER, District Judge.

Petitioner, proceeding *pro se*, filed this petition for a writ of habeas corpus under 28 U.S.C. § 2241 on 25 September 1985. On 21 October respondents submitted a motion for summary judgment to which petitioner responded on 28 October. Respondents' motion is ripe for consideration. The Court exercises jurisdiction under 28 U.S.C. § 2241.

On 12 November petitioner filed a motion for a preliminary injunction in which he asks that the Court order his immediate release on parole. Respondents have replied to this motion and the Court will rule on it together with the instant petition.

Paul Kirk, an inmate at the Federal Correctional Institution (F.C.I.) in Petersburg, Virginia, brings this action challenging a recent decision by the United States Parole Commission to set a parole release date "outside the guidelines." (U.S.P.C.)

Kirk's present thirty-year sentence results from separate convictions for bank robbery in 1975 and 1976. His eligibility for parole began 5 June 1985, the point at which he had served one-third of his total sentence. On 7 May 1985, an examiner panel of the U.S.P.C. held a hearing at the F.C.I. in Petersburg to determine whether and when petitioner should be paroled. The panel recommended that Kirk be paroled effective 5 November 1985, a period five months after his initial parole eligibility date. By notice of action dated 17 May the Regional Commissioner adopted that recommendation. Understanding Kirk's challenge to the above decision necessitates a brief review of Parole Commission regulations.

Inmates' presumptive parole dates are generally calculated by using the "guidelines" promulgated by the U.S.P.C. pursuant to 18 U.S.C. § 4203(a)(1). The guidelines, see 28 C.F.R. § 2.20, provide the U.S.P.C. with a suggested "range" of dates for parole release. That range is arrived at through the combination of two factors: offense severity and "salient factor score," a shorthand way of predicting parole success. Notwithstanding the release date the guidelines suggest, the U.S.P.C. may grant

or withhold parole if it determines there is "good cause" for such a decision. See 18 U.S.C. § 4206(c). In Kirk's case, application of the guidelines suggested release on parole after 60 to 72 months of imprisonment. Kirk's sentences aggregated 360 months. Because Kirk could not be released until he had served one-third of his total sentence, 120 months, see 18 U.S.C. § 1405, incarceration "above the guidelines" to the extent of 48 months [1] was unavoidable. The examiner panel, however, decided that an additional five months beyond the 120 months was required in order to formulate a "parole release plan" for Kirk. It is this decision that Kirk challenges, asserting that lack of a satisfactory "release plan" does not constitute the "good cause" necessary to justify a release date outside the guidelines.

In response, the Parole Commission maintains that a release plan is an essential element of the parole process which insures that an inmate "properly reintegrates into society." Further, formulation of such a plan is required, it argues, by the U.S.P.C.'s statutory mandate of ensuring that "release [of a parolee] would not jeopardize the public welfare" see 18 U.S.C.S. 4206(a)(2). Respondent also points to language in the Parole Commission's regulations stating that: "A grant of parole is conditioned upon the approval of release plans by the Regional Commissioner." 28 C.F.R. § 2.33(a). Finally respondent has cited a number of cases in which release on parole was delayed because of the lack of a suitable release plan. See *Housler v. Nelson,* 453 F.Supp. 874 (D.Conn.1978), *Paulus v. Fenton,* 443 F.Supp. 473 (M.D.Pa. 1977).

The first step in addressing Kirk's claim is to determine what standard ought to govern the Court's review of his allegation that the U.S.P.C. has acted in contravention of its own regulations. Kirk has brought this action pursuant to 28 U.S.C. § 2241 which provides that the writ of habeas cor-

pus may issue to a prisoner "in custody in violation of the Constitution or laws of the United States." Section 2241 most often provides a jurisdictional basis for claims of constitutional infringement. In the instant case, however, Kirk's claim that the U.S. P.C. failed to follow its own regulations essentially alleges a violation of the Administrative Procedure Act, see 5 U.S.C. § 701, *et seq.* It is settled in this circuit, see *Garcia v. Neagle,* 660 F.2d 983 (4th Cir. 1981), that the U.S.P.C. is, like other administrative agencies, subject to the requirements of the A.P.A. Further, § 703 of the Act expressly authorizes review by a petition for a writ of habeas corpus, the route Kirk has taken here. Accordingly, the initial inquiry in this case is not whether Kirk is in custody "in violation" of the Constitution or laws of the United States but rather whether he is "aggrieved by agency action" within the meaning of 5 U.S.C. § 702, see *Brown v. Lundgren,* 528 F.2d 1050, 1054 n. 4 (5th Cir.1976).

Because judicial review of agency action is founded on the A.P.A., it may be restricted by a congressional determination that certain actions are committed to agency discretion. See 5 U.S.C. § 701(a)(2). 18 U.S.C. § 4218(d) makes clear that the U.S. P.C.'s substantive decisions to either grant or withhold parole are not reviewable by this Court even under an "abuse of discretion" standard. See *Garcia,* 660 F.2d at 988 n. 4.

Nevertheless, although the U.S.P. C.'s substantive decisions on the merits are exempt from review, courts retain the power to review allegations that an agency has taken action in violation of its own regulations. See R. Pierce, Jr., S. Shapiro and P. Verkuil, Administrative Law and Procedure p. 219 (1985) or acted "without observance of procedure required by law." 5 U.S.C. § 706(2)(D). Accordingly, this Court is authorized to review Kirk's claim that the U.S.P.C. improperly arrived at a decision outside the guidelines by relying on a stat-

---

1. "Above the guidelines" is measured from the upper limit of the range, here 72 months. (120 − 72 = 48).

utorily impermissible ground. Before commencing this review the Court notes that Kirk has exhausted administrative remedies by appealing the examiner panel's decision to the U.S.P.C.'s National Appeals Board.

■ In reviewing an allegation that an agency has taken action in contravention of its own regulations, a court may sometimes be required to scrutinize the agency's contention that its own interpretation of its regulations indicate that they were in fact followed. Review of the reasonableness of the agency's interpretation is required if the principle that agency discretion is bounded by its own regulations is to have any meaning. Nevertheless, in conducting its inquiry into whether the agency's interpretation can be rested upon the regulation, a court should not attempt to substitute its own judgment for that of the agency or choose the "best" interpretation over a viable one advanced by the agency. An agency's interpretation of its own regulations is due special deference by virtue of its unique familiarity with the subject matter of regulation. See *National Assoc. of Metal Finishers v. Environmental Protection Agency*, 719 F.2d 624 (3d Cir.1983). This deference requires that challenges to an agency's interpretation should fail unless the agency's interpretation is "unreasonable." See *Lieberman v. Gunnell*, 726 F.2d 75 (2d Cir.1984).

In the present case Kirk contends that the U.S.P.C.'s application of the § 4206(c)'s "good cause" exception to a lack of release plan rests upon an unreasonable interpretation of its own regulations. The Court agrees, finding that the U.S.P.C.'s own regulations expressly provide procedures to be followed when a release plan has not been formulated and disable the agency from treating the same factor as "good cause" for setting a release date outside the guidelines.

Determining whether the U.S.P.C. properly used § 4206's "good cause" exception requires more than answering whether it is appropriate for the U.S.P.C. to delay release on parole in order to formulate a release plan. It is only too easy to accept respondent's suggestion that a release plan is an essential element of parole,[2] the satisfactory formulation of which must precede release. It would be a short step to the further conclusion that delay of release for such a reason sensibly fits into the "good cause" justification for decisions outside the guideline. Indeed, in the absence of any indication of a contrary regulatory intent, this Court would feel bound to accept respondent's argument.

A plausible interpretation of a regulation standing alone may lose its persuasiveness when the regulation is considered within the context or an overall statutory or regulatory scheme. Here, a careful review of the U.S.P.C.'s rules and procedures manual has led the Court to two conclusions, first, the U.S.P.C. may in an appropriate case retard release on parole for lack of a release plan, second, in the instant case the decision to retard was made by the wrong arm of the U.S.P.C. and without the procedural protections that the regulations provide for such decisions.

In reviewing the U.S.P.C.'s regulations, the Court looks first to those circumstances which the regulations specifically advise may constitute "good cause" for a decision above the guidelines. The Notes and Procedures following 28 C.F.R. § 2.20, § 2.20–05, give some of the following as factors warranting a decision above the guidelines: "(1) Aggravated nature of offense behavior; (2) Extremely vulnerable victim; (4) Poorer parole risk (alcohol, drug use, etc.); (8) Institutional misconduct." Although the notes caution that the above are not "the only situations in which a decision above the guidelines may be considered," they present examples of "good cause" somewhat at variance from the mere absence of a release plan.

---

**2.** This discussion assumes the efficacy of parole and accepts *arguendo* the Commission's ability to predict success on parole.

Judging from the above Notes, the U.S.P.C. generally finds the "good cause" required for going above the guidelines in factors that bear directly upon the applicant's essential fitness for parole, e.g., dangerousness, attitude, etc. By contrast, formulation of a release plan would appear to be primarily an administrative matter that could, and should, be performed at some time before the inmate is otherwise ready to be released. In the instant case, the last year or so of the ten years during which Mr. Kirk has been imprisoned surely constitutes an adequate period of time in which to arrive at a satisfactory "release plan."

There appear to be circumstances explaining the failure of the U.S.P.C. to come up with a release plan prior to Kirk's initial parole eligibility date of 5 June 1985. According to the unrefuted affidavit of Stephen Michniak, a "Correctional Treatment Specialist" at Petersburg, Kirk "prior to his 7 May hearing ... refused to assist or cooperate with staff in the preparation of release planning, despite warnings that the lack of release planning could possibly result in the retardation of his release date." Kirk's lack of cooperation adequately explains why a release plan had not been designed previous to 5 June.

It might be argued that the "good cause" exception of § 4206(a)(2), usually applied to deny an "unfit" parolee release, fairly applies where an inmate's recalcitrance delays completion of an essential element of the parole package. But Kirk's recalcitrance was not advanced as the reason for delay. Further, the absence of a release plan is explicitly dealt with by U.S.P.C. regulations.

28 C.F.R. § 2.28(e) reads:

When an effective date of parole has been set by the Commission release on that date shall be conditioned upon the completion of a satisfactory plan for parole supervision. The appropriate Regional Commissioner may on his own motion reconsider any case prior to release and may reopen and advance or retard an effective parole date for purposes of re-

lease planning. Retardation without a hearing may not exceed 120 days.

Other sections of the U.S.P.C. regulation which speak of the necessity of retarding release in order to formulate a release plan refer back to § 2.28(e). For example, see 28 C.F.R. § 2.12(d): "A presumptive parole date shall be contingent upon an affirmative finding ... that the prisoner has ... suitable release plan and shall be subject to the provisions of Section ... 2.28." See also 28 C.F.R. § 2.14(6) Pre-release reviews. "(2) Following review, the Regional Commissioner may: ... (ii) Advance or retard a parole date for purposes of release planning as provided by Sec. 2.28(e)".

█ Consideration of the above sections has convinced the Court that delay of release because of the lack of a release plan should be handled pursuant to the explicit provisions of § 2.28(e) cited above. Interestingly, in one of the two cases cited by respondents to show that the U.S.P.C. may retard release because of lack of an adequate release plan, retardation occurred pursuant to § 2.28(e). See *Housler v. Nelson*, supra.

It is true that § 2.28(e) dictates the procedures to be followed for retardation for lack of a release plan after an "effective date of release has been set" by the Commission. In Kirk's case the U.S.P.C. had not yet arrived at an effective release date. Rather than retarding what was already a fixed release date, the U.S.P.C. "only" delayed setting the effective release date. Therefore, it might be argued, the procedural protections of § 2.28(e) do not apply.

The problem with this argument is that § 2.28(e) evinces an obvious intent to have the U.S.P.C.'s finding that a parolee's release plan is inadequate and that his release should therefore be delayed subject to periodic review. This intent would be undercut if the U.S.P.C. could avoid the requirements of § 2.28(e) by simply making its decision to retard release when setting the effective date of release. The U.S.P.C., by doing little more than changing the label on its actions could thus effectively negate § 2.28(e).

Section 2.28(e) expressly provides a method for the retardation of parole where a release plan is lacking or is unsatisfactory. Other sections involving lack of a release plan refer back to it as does a case cited by respondent. The conclusion is forced upon the Court that § 2.28(e), which is tailored to the problem and provides procedural protections to ensure the rationality and reviewability of the decision to delay release, controls this situation and that U.S.P.C. is not free to delay release on parole for lack of a release plan under the amorphous justification of "good cause."

In making the determination whether petitioner's presumptive parole date should become his effective date of release the examiner panel erred in considering whether an adequate release plan had been arrived at. The examiner panel should have set an effective release date without regard to that factor. It would then have been up to the Regional Commissioner to decide, pursuant to § 2.28(e), whether and for how long to retard release.

Agencies are bound by their own regulations and courts have the responsibility of reviewing "allegations that an agency exceeded its legal authority ... or failed to follow its own regulations." *Garcia v. Neagle*, 660 F.2d 983, 988 (4th Cir.1981), citing *Ness Investment Corp. v. U.S. Department of Agriculture*, 512 F.2d at 714. Here review has uncovered an error in setting petitioner's effective release date. The remaining question is the appropriate remedy.

Kirk's effective date of release, 5 November 1985, has come and gone; he remains incarcerated. The pleadings indicate that sometime before his effective date of release, Kirk had a change of heart as to where he wished to serve his parole. Kirk's new itinerary again caused delay in the approval of his release plan and evidently the U.S.P.C. retarded his release pursuant to § 2.28(e). Under this section Kirk will receive a hearing within 120 days.

■ Kirk, in his motion for injunctive relief, seeks immediate release. As the case now stands such relief is premature. Rather the Court will insist that the Commission restore to Kirk the procedural rights he would have received had the regulations been properly followed.

The Court will assume that Kirk's effective date of release, absent U.S.P.C. error, would have been 5 June 1985. Because no release plan had been formulated, the Regional Commission could have retarded release pursuant to § 2.28(e).

Had the Commission followed appropriate procedures, petitioner would already have had the hearing mandated by § 2.28(e). He should have it now. Such a hearing need not result in his release; as the note following § 2.28(e) indicate, an inmate's release may be delayed indefinitely by the Regional Commissioner. Nevertheless, Kirk is entitled to have the U.S.P.C. consider whether and when his release is appropriate in accordance with the regulations it has commendably chosen to provide. This requirement should not prove onerous for the Commission. Instead of giving Kirk a hearing sometime in March as they would in any event be required to, they must provide such hearing within twenty days of the date of entry hereof. If the Parole Commission fails to provide a § 2.28(e) hearing within that time the Court will issue the writ and direct that petitioner be discharged from custody. See *Lupo v. Norton*, 371 F.Supp. 156 (D.Conn.1974).

And it is so ORDERED.