**Michael PAGE, Petitioner,**

v.

**Eddie L. PEARSON, et al., Respondents.**

**No. CIV.A. 02–467–AM.**

United States District Court,
E.D. Virginia,
Alexandria Division.

May 15, 2003.

Michael Page Atlanta, GA, pro se.

Anita C. Snyder, Assistant United States Attorney, Alexandria, VA, for Respondents.

*MEMORANDUM OPINION*

ELLIS, District Judge.

Petitioner Michael Page ("Page"), a District of Columbia prisoner formerly incarcerated at Sussex II State Prison, filed this *pro se* petition under 28 U.S.C. § 2241 challenging the denial of parole. Respondent answered Page's petition by filing an Opposition, and Page responded to that filing. Thus, this matter is ripe for adjudication. For the reasons that follow, Page's petition must be dismissed.

**I.**

On March 20, 1978, Page pled guilty to (i) second degree murder while armed, (ii) assault with a dangerous weapon, and (iii) robbery in the District of Columbia Superior Court. He was thereafter sentenced to 15 years, 4 months to life in prison. On August 18, 1989, Page was granted parole by the District of Columbia Board of Parole ("Board") and transferred to a half-

way house. On April 11, 1990, Page was arrested and charged with possession with intent to distribute cocaine. As a result, Page was returned to prison. Subsequently, however, the drug charge was dismissed and Page was again transferred to the halfway house on October 9, 1990.

On November 30, 1990, Corrections Officer Ronald Richardson and Sergeant Jessie Smith detected an odor emanating from Page's room at the halfway house and opened the door. After advising Page that he would search Page and his room, Officer Richardson did so and found a roll of twenty-dollar bills, a large rock-like substance, and drug paraphernalia. In light of these discoveries, the officers informed Page he would be placed in lockdown. Hearing this, Page retrieved a gun from his bed, pointed it at the officers, threatened to shoot them, and then escaped from the halfway house. This conduct netted Page additional charges in the District of Columbia Superior Court, including (i) prison breach, (ii) assault on a police officer with a dangerous weapon, (iii) two counts of assault on a correctional officer, (iv) armed kidnaping, (v) assault with a deadly weapon, (vi) possession of a firearm during a violent crime, and (vii) drug possession.

Page was not thereafter apprehended until January 8, 1991, at which time additional charges were lodged against him on the basis of conduct at the time of his arrest, including (i) possession of ammunition, (ii) possession of drug paraphernalia, (iii) carrying a deadly weapon, and (iv) having an unregistered firearm. On April 30, 1991, the Board revoked Page's parole.

At trial on the various charges against him in the District of Columbia Superior Court, Page was found guilty only of the charges of prison breach and possession of ammunition. He was acquitted of the remaining charges.[1] On December 11, 1991, Page was sentenced to a consecutive term of 20 months to five years for the prison breach. Later, on April 16, 1992, Page was sentenced by the same court to a one-year consecutive term for possession of ammunition.

On July 15, 1994, the Board conducted a parole hearing, at which Page denied that he possessed a weapon or drugs at the time of his 1990 escape and claimed that he had left the halfway house out of fear because Officer Richardson had threatened him in the past. The hearing examiner rejected Page's denial and recommended that the Board deny Page's parole. Significantly, the hearing examiner noted that Officer Richardson had been shot and killed before he could testify in Page's criminal case.

On July 21, 1994, the Board issued an order denying parole based on Page's repeated criminal behavior and his need for rehabilitative programs to minimize the risk he posed to the community. On August 7, 1996, the Board held a rehearing on Page's parole. On this occasion, the Board determined that Page represented a significant risk to the community if released, given his serious criminal history, including violent offenses. Thereafter, on January 13, 1997, the Board denied Page parole but ordered that he would be reconsidered for parole by November 1, 2001.

On July 19, 1997, Page's attorney requested that the Board review its decision to deny Page parole, as well as its decision to postpone his rehearing date for more than four years. In support, she contended that the Board erred in holding Page

---

1. The record does not disclose whether Page was tried on all the charges then pending against him, nor does it reflect any reason for the acquittals other than that Officer Richardson had been shot and killed prior to trial and hence was unavailable to testify.

responsible for acquitted conduct. The Board rejected this contention and adhered to its decision to deny parole for Page and to wait until 2001 to revisit the issue.

On October 10, 2001, Page received a reconsideration hearing before the U.S. Parole Commission ("USPC").[2] At the hearing, Page denied shooting anyone with regard to his 1978 criminal convictions and further alleged that the murder victim was actually shot by his brother, now deceased. In addition, a psychological evaluation of Page revealed that he had no mental disorders. However, the hearing examiner concluded that Page remained an extremely serious risk of danger to the community based on his 1978 offenses and his escape by force from the halfway house.

The USPC agreed with the hearing examiner's recommendation, and Page was notified of the decision denying parole by Notice of Action dated November 29, 2001. In addition to advising Page that his parole was denied, the Notice also informed him that he was scheduled for a parole rehearing in October 2003. The Notice further stated that, although the guidelines suggested parole should be granted, a departure from the guidelines was warranted because:

> you are a more serious risk than indicated by your grid score in that based upon the level of violence which occurred in the original offense which involved Murder II and a separate offense that involved Assault with a Deadly Weapon, and a third that involved Murder. [sic]

Also, you have a history of an escape and altercation with a staff member.

On November 4, 2002, the USPC issued a revised Notice of Action, which corrected the misstatement in the original Notice; the revised Notice correctly stated that Page had been convicted of second degree murder, assault with a deadly weapon, and robbery, not another murder as indicated in the original Notice.

On March 20, 2002, Page filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Respondent filed a timely response, and Page has filed a response in opposition. In his petition, Page alleges that the USPC violated his constitutional rights by relying on criminal charges Page was acquitted of to deny him parole repeatedly.

## II.

■ Analysis properly begins with a focus on the scope of judicial review of parole decisions. On this issue, the law is pellucidly clear: Congress committed decisions to grant or deny parole to the absolute, unreviewable discretion of the USPC. 18 U.S.C. § 4218(d) (repealed)[3]; *see also Garcia v. Neagle,* 660 F.2d 983, 988 (4th Cir.1981); *United States Bd. Of Parole v. Merhige,* 487 F.2d 25, 29 (4th Cir.1973). Parole decisions are therefore not subject to arbitrary and capricious or abuse of discretion review under the provisions of the Administrative Procedure Act, 5 U.S.C. § 701(a)(2). Yet, this does not mean parole decisions are wholly immune

---

**2.** On August 5, 1998, the Board was abolished and the U.S. Parole Commission took over all parole matters for D.C. offenders. National Capital Revitalization and Self–Government Improvement Act, Pub.L. No. 105–33, § 11231(a)(1), 111 Stat. 712, 745; *Franklin v. Dist. of Columbia,* 163 F.3d 625, 632 (D.C.Cir. 1998); 28 C.F.R. § 2.70(a); D.C.Code § 24–131.

**3.** Although the Parole Commission and Reorganization Act of 1976 was technically repealed on November 1, 1987, the provisions of the Act are to remain in effect until November 1, 2005. *See* 21st Century Department of Justice Appropriations Authorization Act, Pub.L. No. 107–273, § 11017, 116 Stat. 1758, 1824–25 (2002).

from judicial review; to the contrary, courts in cases challenging USPC decisions may consider claims that the USPC "exceeded its legal authority, acted unconstitutionally or failed to follow its own regulations." *See Garcia,* 660 F.2d at 988; *see also Fardella v. Garrison,* 698 F.2d 208, 210 (4th Cir.1982).

Given this carefully circumscribed scope of judicial review of USPC decisions, it follows that Page cannot prevail on his claims that the USPC abused its discretion in relying on acquitted conduct and in departing from the guidelines to deny his parole. The USPC's exercise of discretion in granting or denying Page's parole is unreviewable and thus this Court is "without power to engage in judicial review of the Commission's substantive decision" to deny Page's parole. *Garcia,* 660 F.2d at 988. In other words, the substance or merits of the parole decision concerning Page are beyond judicial review.

But the analysis cannot end here; Page's claims must now be examined to determine whether they may be read as claiming that the USPC, in denying Page's parole, acted *ultra vires,* unconstitutionally, or in contravention of its own regulations. These are Page's only possible avenues to relief, but for him, they are dead ends.

The USPC's consideration of acquitted conduct in Page's case falls into none of the three categories of reviewable acts. It is neither *ultra vires* nor unconstitutional. Nor did the USPC's consideration of acquitted conduct transgress USPC procedures because there is no regulation prohibiting the USPC from considering a prisoner's acquitted conduct. Instead, the regulations support the contrary. A jury's decision to acquit a defendant because the state failed to prove a charged offense beyond a reasonable doubt is not binding on the USPC, which bases its parole decisions on the lesser preponderance of the evidence standard. *See* 28 C.F.R. § 2.105(a). Moreover, while there is no Fourth Circuit case directly on point, other circuits have sensibly concluded that the USPC may consider a parole candidate's criminal behavior even in the absence of a criminal conviction for the conduct.[4]

In Page's case, the USPC properly relied on the information available in the presentence report prepared after Page was found guilty of prison breach and possession of ammunition. The presentence report stated that on November 30, 1990, Page was found to be in possession of drugs and drug paraphernalia at the halfway house. The report also stated that Page pointed a gun at two corrections officers, threatening to shoot them. Finally, the report stated that Page ordered the officers to help him escape and that he did escape from the halfway house. Although Page was not convicted of assault on a corrections officer or kidnaping, the USPC appropriately relied on the presentence report and the corrections incident report to make its finding by a preponderance of the evidence and then deny parole on this basis. Thus, as it is clear from the record that the USPC's decision to deny parole was based on a preponderance of all of the information presented and was not *ultra vires,* unconstitutional, or in violation of

---

4. *See Mullen v. United States Parole Comm'n,* 756 F.2d 74, 75 (8th Cir.1985) (holding dismissal of criminal charges for "lack of prosecutorial merit" did not bar independent factfinding by USPC); *Bowen v. United States Parole Comm'n,* 805 F.2d 885, 887 (9th Cir. 1986) (holding USPC may consider "unadjudicated allegations" in the parole revocation process); *Whitehead v. United States Parole Comm'n,* 755 F.2d 1536, 1537 (11th Cir.1985) (holding USPC may use arrest reports as evidence to revoke parole).

any USPC regulations, Page's claim is without merit and must be dismissed.

 Likewise, Page's claim that the USPC departed from the guidelines also fails because the USPC's actions in this regard were not *ultra vires*, unconstitutional, or in breach of its own procedures. Page correctly asserts that the USPC must adhere to the guidelines. *See Garcia*, 660 F.2d at 991 ("Although the Parole Act envisions that parole decisions are to be individualized, they are nevertheless to be made according to established guidelines."). And, the record reflects that the USPC did precisely this in Page's case. Thus, 18 U.S.C. § 4206(c) "allows a parole determination outside the guidelines ... for good cause." *Id.* In its unreviewable discretion, the USPC may consider "unusual circumstances" to depart from the guidelines. 28 C.F.R. § 2.80(n)(1). The federal regulations define "unusual circumstances" as "case-specific factors that are not fully taken into account in the guidelines, and that are relevant to the grant or denial of parole." *Id.* Such factors include, but are not limited to, a parolee's "unusually persistent history of criminally related substance (drug or alcohol) abuse," "unusually extensive prior record," and prior record of extensive violence. *Id.* at § 2.80(n)(2).

In the instant case, Page's total point score under the guidelines was a 2, which, in the absence of unusual circumstances, means that parole should be granted. And, the USPC acknowledged this. Yet, after noting this, the USPC appropriately considered the unusual circumstances presented, namely Page's convictions for the violent offenses of second-degree murder, assault with a deadly weapon and robbery, his escape from the halfway house, and his altercation with the corrections officers while escaping. Thus, the USPC in its discretion appropriately departed from the guidelines. The record plainly reflects that the USPC's decision to depart from the guidelines was not arbitrary, but rather based upon a review of all of the information presented in the hearing examiner's report. Accordingly, Page has failed to demonstrate that the USPC, in departing from the guidelines, disregarded its procedures, acted beyond its legal authority, or violated the Constitution. Thus, Page's second claim must be dismissed.

### III.

For the reasons stated above, Page's petition must be dismissed. An appropriate Order will issue.