Hector
**GUERRERO–GUERRERO, Petitioner,**

v.

**J.J. CLARK, Warden, et al.,
Respondents.**

**Civ. A. No. 87–1299–AM.**

United States District Court,
E.D. Virginia,
Alexandria Division.

May 19, 1988.

Hector Guerrero–Guerrero, Petersburg, Va., pro se.

Dennis E. Szybala, Asst. U.S. Atty., Alexandria, Va., for respondents.

## MEMORANDUM OPINION

ELLIS, District Judge.

### I. *Introduction*

In this *habeas* case, an alien parolee, captured twice on the high seas for importing large amounts of marijuana, alleges certain procedural defects associated with his 1983 parole and his 1984 conviction. This matter is before the Court on respondents' motion to dismiss or, alternatively, for summary judgment, filed in response to petitioner's application for a writ of *habeas corpus*.[1] Petitioner, notified of his right to respond to the respondents' pleading, filed a memorandum in opposition. Petitioner presents seven claims for relief:

(1) that he was denied due process of law because he neither speaks nor understands English and the United States Parole Commission failed to use a translator or trans-

---

1. *See* 28 U.S.C. § 2241 (power of district court to grant writ).

lation to insure that he understood the conditions of his special parole;

(2) that the Parole Commission had no jurisdiction to revoke his parole once petitioner was deported to Chile;

(3) that it was a violation of due process of law for the Parole Commission to fail or refuse to correct the illegal conviction and sentence imposed on October 26, 1984 by the United States District Court for the District of Puerto Rico;

(4) that his rights to equal protection have been violated because he was singled out for prosecution;

(5) that he was denied due process and equal protection because he received a parole date later than that of his co-defendants;

(6) that he was denied due process of law at his parole hearing because his counsel was constitutionally ineffective; and

(7) that the Parole Commission guidelines illegally discriminate against those convicted of high seas crimes, including petitioner.

A review of the pleadings submitted by the parties reveals that there are no disputed material issues of fact. Therefore, summary disposition of the petition is appropriate. For the reasons stated below, petitioner's claims are meritless. Summary judgment is granted and this cause dismissed with prejudice.

## II. *Findings of Fact*

1. Petitioner, Hector Guerrero–Guerrero, is a Chilean citizen who is currently an inmate at the Federal Correctional Institution at Petersburg, Virginia.[2]

2. On or about April 1, 1982, the United States Coast Guard apprehended a vessel on the high seas that was transporting a large quantity of contraband. Petitioner was on board at the time, acting as Master of the vessel. Petitioner and the vessel were seized by the authorities and taken to the Southern District of Florida. On June 28, 1982, petitioner was convicted in the United States District Court for the Southern District of Florida on a two count indictment charging conspiracy to import, and importation of, approximately twenty tons of marijuana. He was sentenced to a two-year adult sentence with a two-year special parole term on one count, and imposition of sentence was suspended on the second count in order to place petitioner on a five-year term of probation to commence upon his release from incarceration.

3. On September 30, 1983, petitioner was released on parole from the 1982 conviction.[3]

4. Upon release, a certificate of special parole was issued to petitioner which indicated that he was to remain under the jurisdiction of the United States Parole Commission under the conditions set forth until October 2, 1985. The conditions set forth in the certificate included a provision that during this time he was to remain within the limits of the Southern District of Florida. Another of the special parole conditions was a standard proscription against violating any laws.[4]

5. At the time of petitioner's mandatory release on September 30, 1983, he was able to speak, read and understand very little English. Petitioner's native language is Spanish. The petitioner was not supplied with a Spanish translation of his certificate of special parole, nor of the specific conditions of the parole, including the condition that he not violate any laws of the United States. Petitioner's case manager advised petitioner that he needed to sign the parole papers in order to "go home," but did not translate into Spanish any of the parole conditions. Accordingly, although Petitioner knew he was released on parole, the Court finds that petitioner did not receive actual notice of any of the conditions of the parole, including the condition that he not violate any laws of the United States.

6. Petitioner began serving the special parole term on October 3, 1983. As a

**2.** Petitioner asserts that he resides in Colombia, South America on a visa.

**3.** This parole release was mandatory.

**4.** Respondents' Exhibit J.

result of his 1982 conviction on the second count of the indictment, petitioner was also on probation which was scheduled to expire September 29, 1988.

7. On October 12, 1983, subsequent to being released on parole, petitioner was deported by the United States Immigration and Naturalization Service to Barranquilla, Colombia.

8. On June 17, 1984, a United States Coast Guard surveillance aircraft spotted the motor vessel *Stecarika,* a 240 foot ship, and the sail vessel *Esperance* on the high seas at latitude 15.40 N and longitude 68.28 W. Coast Guard Cutter *Dallas* established radio contact with the *Stecarika* on June 18, 1984. Petitioner, Master of the *Stecarika,* granted authorization for a routine inspection of the ship.

9. Once aboard and in the course of the inspection, Coast Guard personnel smelled marijuana in one of the ship's holds and noticed a line connecting the *Stecarika* with the *Esperance.* Numerous burlap bags were discovered concealed in a secret compartment in the lower hold of the *Stecarika.* A field test of the contents of the sacks disclosed that it was marijuana.

10. Crew members of both ships, including petitioner, were placed under arrest, the ships were seized, and both ships and the 22 crew members were escorted to San Juan, Puerto Rico. Upon their arrival on June 21, 1984, United States Customs officials took custody of the vessels, the crew members and the approximately 22,000 pounds of marijuana found on board.

11. Petitioner was enroute to Savannah, Georgia when he was apprehended and has steadfastly asserted that he did not know marijuana was concealed in the vessel's hold.

12. On June 26, 1984, petitioner was indicted for possession with intent to distribute and possession with intent to import unlawfully into the United States some 22,000 pounds of marijuana. Petitioner was not charged as a second offender, although

this was his second federal drug offense. After a jury trial in the United States District Court for the District of Puerto Rico, on October 26, 1984, petitioner was convicted and sentenced to five years incarceration. Petitioner was committed to the custody of the Attorney General on January 17, 1985.

13. At the time petitioner committed this second offense, he was still subject to the two-year special parole term imposed in 1982. Therefore, a special parole violator warrant was lodged against him as a detainer on December 21, 1984.

14. A combined dispositional revocation/initial hearing was scheduled to be held on July 3, 1985 by the Parole Commission at the Federal Correctional Institute at Petersburg, Virginia. That hearing was continued to give petitioner an opportunity to be represented by counsel and to review a copy of the special parole violator warrant application. Petitioner was then provided with court-appointed counsel and received a combined special parole violator revocation hearing/initial hearing on September 6, 1985. At that hearing, petitioner had the benefit of a qualified staff interpreter.

15. Following the hearing, the examiner panel recommended that petitioner's special parole term be revoked and that none of the time spent on special parole be credited toward service of that term. The ground for the revocation was petitioner's 1984 conviction for the identical crime involved in his 1982 conviction and 1983 parole. The panel also recommended that petitioner begin serving the unexpired portion of his original 1982 sentence on his release from his new 1984 sentence and that petitioner serve the entire 1984 sentence without parole. These recommendations were adopted by the Parole Commission. Petitioner took no administrative appeal from this action.

16. Petitioner received a statutory interim hearing[5] on March 5, 1987. Counsel

---

5. For inmates serving a maximum term or terms of less than seven years, like petitioner, Title 18 U.S.C. § 4208(h) requires an interim

hearing to be held every eighteen months until release. 28 C.F.R. § 2.14(a)(1)(i) (1987). The purpose of the interim hearing is to "consider

and a qualified interpreter assisted petitioner throughout the interim hearing. Following this hearing, the Parole Commission panel recommended no change from the prior commission action. The recommendation was adopted by the Parole Commission and appealed by the petitioner. The National Appeals Board affirmed the Commission decision which requires petitioner to serve his new federal sentence to expiration without parole.

17. On October 14, 1987, the special parole violator warrant was executed on petitioner's mandatory release [6] from the 1984 sentence. Petitioner currently remains in federal custody serving the two-year special parole violator term. An Immigration and Naturalization Service detainer for petitioner's deportation has been lodged at FCI–Petersburg.

### III. *Conclusions of Law*

A. *Failure to translate parole conditions*

■■■ Petitioner claims first that he was denied due process because the Parole Commission failed to insure that he understood the conditions of his parole. More specifically, petitioner's claim is limited to the failure to translate into Spanish the parole condition prohibiting criminal conduct,[7] for it was petitioner's violation of that condition that led to the parole revocation of which he complains here. In es-

sence, then, petitioner claims due process was offended when he was not warned in Spanish that his parole would be revoked if he committed a serious crime, indeed, the very same serious crime for which he was originally convicted and incarcerated.[8] So viewed, the claim is palpably without merit, even ludicrous; due process does not require translation of the obvious. It would make as much sense to require translation into Spanish of, say the fact that standing in front of a speeding train is hazardous to one's health. To require a Spanish translation of the parole condition to refrain from criminal conduct trivializes due process as a guarantee of fundamental fairness. The Supreme Court recognizes this point for it has consistently held that "[i]t is axiomatic that due process 'is flexible and calls for such procedural protections as the particular situation demands.'" *Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 12, 99 S.Ct. 2100, 2106, 60 L.Ed.2d 668 (1978) (quoting *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972) (citations omitted)). Neither fundamental fairness nor logic call for a Spanish translation in this context.[9] Petitioner cannot plausibly contend that his 1984 criminal conduct would have been deterred had he been told in Spanish in 1983 that criminal conduct would result in revocation of his parole.

---

any significant developments or changes in the prisoner's status that may have occurred subsequent to the initial [parole] hearing." 28 C.F.R. § 2.14(a) (1987). After such a hearing, the Commission is authorized to take a broad range of actions including, but not limited to, advancing, retarding or rescinding a presumptive release date or ordering no change from previous Commission action.

6. Mandatory release is authorized by both Title 18 U.S.C. § 4164 (supervised release until expiration of term less 180 days) and Title 18 U.S.C. § 4205(f) (supervised release until expiration of term). A prisoner is released by operation of law at the end of the court imposed sentence less good time deductions. *See* 28 C.F.R. § 2.35 (1987). Such a release is deemed to be "as if on parole" during the period of supervision. *See Williams v. Ciccone,* 293 F.Supp. 271 (W.D.Mo. 1968), *aff'd,* 415 F.2d 331 (8th Cir.1969); *Gaskins v. Kennedy,* 350 F.2d 311 (4th Cir.1965) (same application for D.C. prisoners).

7. Parole is a matter of grace, not entitlement; it is a privilege that may be conditionally granted. *See Bradford v. Weinstein,* 519 F.2d 728 (4th Cir.1975). It is also clear that a stricture against violating any law is legally permissible. *See Carmel v. Thomas,* 510 F.Supp. 784 (S.D.N.Y. 1981). The Commission is authorized by statute to fix appropriate terms and conditions of parole. Title 18 U.S.C. § 4209; *see* 28 C.F.R. § 2.40(a)(1)–(13) (1987)

8. Petitioner concedes that he knew his parole release was not unconditional; he simply contends that the conditions were not explained to him.

9. Worth noting, too, is the fact that no statute or regulation requires that prisoners be furnished with translations of parole conditions into their native tongue.

It is important to distinguish this case from one in which a parolee's conditional liberty is revoked for violation of some technical, non-criminal activity such as the failure to file in timely fashion a monthly parole report or the failure to give notice of change of address within the required two day limit. In such instances, due process might well require translation to insure that the conditions are understood.[10] But that is not this case and the Court's holding here does not reach such a case. Rather the holding here is simply that, as a matter of law, due process does not require a Spanish translation of a parole condition prohibiting criminal conduct while on parole. The respondents are therefore entitled to judgment as a matter of law.

### B. Parole Commission jurisdiction to revoke parole after deportation

█ Next, petitioner asserts that once he was deported to Chile, the Parole Commission no longer had jurisdiction to revoke his special parole term. This contention, too, is meritless and without legal support. To hold otherwise would be to give parolees the key to the removal of their parole restrictions; all they would have to do to defeat parole is to leave the United States. This is nonsense. The term "jurisdiction" in the statute governing jurisdiction of the United States Parole Commission is used in the sense that a parolee's conduct is subject to Commission supervision until the expiration of the sentence. *Martin v. Luther,* 689 F.2d 109 (7th Cir.1982). And this is true wherever the parolee may travel. Thus, petitioner's absence from the Southern District of Florida does not affect the Commission's "jurisdiction." Indeed, absence from the District may be a basis for parole revocation. Moreover, the Certificate of Special Parole specifically states that petitioner was to remain under supervision until October 2, 1985. As petitioner's 1984 criminal conduct occurred within

the period of supervision, the Parole Commission was clearly within its authority and jurisdiction to revoke his special parole term notwithstanding the fact petitioner had departed the United States in the interim.[11] Accordingly, respondents' motion as to this claim is granted.

### C. No jurisdiction to support the 1984 conviction and sentence

█ In his third claim, petitioner asserts that because he was apprehended in international waters, the resulting conviction was entered in an absence of jurisdiction and the Parole Commission failed in its obligation to correct the illegal sentence. This is an attack on his 1984 conviction. As such, the claim must be raised with the sentencing court pursuant to 28 U.S.C. § 2255. *Blackledge v. Allison,* 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977); *Braden v. 30th Judicial Circuit Court,* 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973) (dictum); *see also United States v. Addonizio,* 442 U.S. 178, 184–86, 99 S.Ct. 2235, 2239–41, 60 L.Ed.2d 805 (1979) (collateral attacks brought under 28 U.S.C. § 2255 are limited to claims of constitutional magnitude or to errors which inherently result in a complete miscarriage of justice); *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962).

Moreover, the Court believes this claim is factually unsupported. While petitioner was on the "high seas" at the time of his arrest, he concedes he was enroute to the United States when spotted by a surveillance plane. A day after petitioner's ship was located at latitude 15.40 N and longitude 68.28 W, the Coast Guard boarded the ship with his consent. Petitioner's admission that he was enroute to a destination within the United States is a sufficient link to establish subject matter jurisdiction of a federal district court to prosecute him as a violator of the Marijuana on the High Seas

---

**10.** *See Panko v. McCauley,* 473 F.Supp. 325, 327 (E.D.Wis.1979) (parole condition forbidding petitioner to "frequent taverns" was unconstitutionally vague because there was no evidence petitioner understood that the phrase meant "enter" rather than habitually visit).

**11.** *See e.g., DeCuir v. U.S. Parole Comm'n,* 800 F.2d 1021, 1023 (10th Cir.1986) (Commission is empowered to issue a parole violator warrant whenever any parolee is alleged to have violated his parole during the supervision period).

Act, 21 U.S.C. §§ 955a–955d. *See United States v. Gonzalez*, 776 F.2d 931 (11th Cir. 1985); *United States v. Loalza–Vasquez*, 735 F.2d 153 (5th Cir.1984); *see also United States v. Crews*, 605 F.Supp. 730 (S.D. Fla), *aff'd mem., United States v. McGill*, 800 F.2d 265 (11th Cir.1985). In any event, challenges to jurisdictional defects must be brought in the sentencing court as challenged to the validity of the conviction. 28 U.S.C. § 2255. The Parole Commission has no power to review the validity of a conviction; only the sentencing court, upon consideration of a § 2255 motion, may review a conviction to ascertain its validity. If petitioner obtains a writ of *habeas corpus* holding the conviction invalid, the Parole Commission may not then consider that conviction in determining whether to grant parole. *Strader v. Troy*, 571 F.2d 1263 (4th Cir.1978). Until then, however, this Court cannot find that the Parole Commission has abused its discretion in relying on the facially valid 1984 conviction to revoke petitioner's parole.[12] The Court, therefore, grants respondents' motion as to this claim.

### D. *Selective prosecution*

Petitioner's fourth claim for relief asserts that the Coast Guard surveillance and search of his vessel violated his rights to equal protection because he was improperly singled out for prosecution. At most, petitioner is claiming that because he was apprehended on two occasions by the Coast Guard he is being "singled out." This is nonsense. Petitioner had personal knowledge by reason of the 1982 conviction that the activity in which he was participating in 1984 was criminal and, if detected, would subject him to further criminal prosecution in the United States. The Coast Guard seized both petitioner's ship and the *Esperance* and arrested every crew member on board. Thus, petitioner was not "singled out" for prosecution. In any event, this allegation again attempts to challenge the

validity of petitioner's conviction and must be brought in the sentencing court under 28 U.S.C. § 2255. *Blackledge v. Allison*, 431 U.S. at 74 n. 4, 97 S.Ct. at 1629 n. 4; *Braden v. 30th Judicial Circuit Court*, 410 U.S. at 497, 93 S.Ct. at 1130–31. Because this claim is both meritless and not properly before this Court, respondents' motion to dismiss is granted.

### E. *Disparate parole treatment*

■ Petitioner next asserts that his due process and equal protection rights have been infringed because the Parole Commission has held him longer than his similarly sentenced codefendants. Specifically, petitioner asserts that ineffective representation by his defense counsel has resulted in this abusive denial of parole. This claim, too, fails. Mere disparity of sentence or parole dates, even among co-defendants, does not, in and of itself, suggest that one defendant has been arbitrarily singled out for more severe punishment than that normally imposed upon similarly situated defendants. *See United States v. Truelove*, 482 F.2d 1361 (4th Cir.1973) (upon claim of disparate sentences imposed on co-defendants it was held that a sentence is valid if it did not exceed statutory limits and if it did not appear the defendant receiving the lengthier sentence was arbitrarily singled out); *Patten v. North Dakota Parole Bd.*, 783 F.2d 140, 144 (8th Cir.1986) (claim of disparate parole dates does not state violation of equal protection absent allegation of inconsistent application of parole guidelines). Petitioner provides no specific instances of inconsistent application of the parole guidelines; rather he simply asserts his parole date is later than his co-defendants. Further, petitioner provides no information about his co-defendants' prior criminal records, institutional behavior or other information relevant to parole consideration from which the Court might infer abusive application of the guidelines.

12. The Commission's reliance on the presentence report prepared for the 1984 conviction to reach its parole decision was appropriate. Where the Commission finds information sufficiently accurate for its purposes, reliance on hearsay statements contained in presentence report to calculate presumptive parole date is permissible. *Ochoa v. United States*, 819 F.2d 366 (2nd Cir.1987); *see also United States v. Quan*, 789 F.2d 711 (9th Cir.), *cert. dismissed*, —— U.S. ——, 107 S.Ct. 16, 92 L.Ed.2d 770 (1986).

▆ The Parole Commission's substantive decisions on the merits are exempt from review under 18 U.S.C. § 4218(d). Federal courts retain power to review allegations that the Commission has taken action in violation of its own regulations or acted without observance of procedure required by law. *Zaccour v. Baer,* 629 F.Supp. 259 (E.D.Va.), *aff'd,* 791 F.2d 166 (4th Cir.1986); *see United States v. Grayson,* 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978); *United States Bd. of Parole v. Merhige,* 487 F.2d 25, 29 (4th Cir.1973), *cert. denied,* 417 U.S. 918, 94 S.Ct. 2625, 41 L.Ed.2d 224 (1974). Because parole decisions are statutorily committed to the discretion of the Parole Commission, federal district court jurisdiction is limited to an inquiry concerning a possible abuse of discretion. 18 U.S.C. § 4218(d); *Garcia v. Neagle,* 660 F.2d 983 (4th Cir.1981), *cert. denied,* 454 U.S. 1153, 102 S.Ct. 1023, 71 L.Ed.2d 309 (1982). As Judge Phillips observed, the inquiry is limited to a review of the "very legality of the guidelines or their application, i.e., to whether the Commission acted completely outside the scope of the discretion given it by Congress." *Garcia,* 660 F.2d at 989.

▆ The exhibits prepared by the Parole Commission and submitted by the respondents in support of their motion confirm that the Commission complied with the statutory regulations in setting petitioner's presumptive parole date. Petitioner received an initial parole hearing upon his reincarceration in 1985. Thereafter, he was afforded the requisite statutory interim hearing. Prior to the first hearing and pursuant to the regulations and guidelines promulgated by the Commission under the authority of the 1976 Parole Commission and Reorganization Act, 18 U.S.C. §§ 4201–4218, petitioner's presumptive parole date was computed. The parole guidelines integrate two factors, offense characteristics (severity) and offender characteristics (parole prognosis or salient factor score) [13] on a grid where the offender characteristics suggest a range of time to be served before release for each level of severity. For petitioner, the range was calculated to be 52–64 months based on a Category Six severity [14] and salient factor score of six.[15] Although the Commission has the authority to override the guidelines and set a presumptive parole date above or below the guideline range, 28 C.F.R. § 2.20(c) (1987), the override was apparently not invoked given the seriousness of the offense and its similarity to that for which petitioner had been previously convicted and released. Thus, it appears that petitioner's parole date was properly computed in accordance with parole guidelines. Petitioner was represented by court appointed counsel and assisted by an interpreter and all relevant factors were considered. Other than asserting that his co-defendants were released after service of 29 months on their five-year sentences, petitioner has failed to support his assertion that the guidelines were improperly applied. Finding no abuse of discretion, the Court grants respondents' motion as to this claim.

### F. *Denial of due process at parole hearings*

Petitioner also claims that he was denied his right to due process of law at the parole hearings conducted in 1985 and 1987 because he did not understand the English language proceedings and because his counsel failed to raise issues allegedly relevant to the parole decision. These claims are clearly frivolous. Petitioner had the services of court appointed counsel and an interpreter at both his combined dispositional revocation/initial hearing and his statutory interim hearing. He clearly had the means to present his case and understand the result.

---

**13.** *See* 28 C.F.R. § 2.20 (1987).

**14.** Petitioner was rated category six because he was involved in a non-peripheral role as captain of the *Stecarika* in an offense involving an excess of 20,000 pounds of marijuana. *See* 28

C.F.R. § 2.20, Chapter Nine, Subchapter B (1987).

**15.** *See* Respondents' Exhibit E and instructions following 28 C.F.R. § 2.20 (1987) for computing salient factor score.

Equally frivolous is petitioner's claim that his due process rights were denied because he did not receive a copy of the special parole violator warrant until July 3, 1985, a number of months after it was issued in December 1984. He claims this delay prevented him from preparing his defense for the revocation hearing. Although petitioner was not given a copy of the warrant until July 3, 1985, he suffered no prejudice from the delay. The initial parole hearing was scheduled for July 3, 1985 but was continued until September by the Commission to allow petitioner to receive and review the warrant and to obtain counsel.[16] Due process requires a reasonably prompt informal inquiry conducted by an impartial hearing officer to determine if there is a reasonable ground to believe that the arrested parolee has violated a condition of his parole. A parolee is entitled to receive prior notice of the inquiry, its purpose, and the alleged violations. *Morrissey v. Brewer,* 408 U.S. 471, 488–90, 92 S.Ct. 2593, 2603–05, 33 L.Ed.2d 484 (1972). Petitioner received these; his hearing was continued to ensure compliance with these requirements. Therefore there is no constitutional violation where, as here, the delay in receiving the warrant was followed by a continuance to allow petitioner to prepare a defense to the statements in the warrant.[17]

Petitioner also asserts that appointed counsel's failure to raise two issues at the

hearing deprived him of due process. Petitioner contends counsel should have contested the legality of the seizure of the marijuana from his vessel on the ground that an alleged "territorial border" surrounds foreign ships and immunizes their crew from I.N.S. violations so long as they do not disembark. In his petition, Guerrero–Guerrero also asserts that counsel's failure to "represent the fact that drugs were not seized on board the vessel until the vessel was hauled to Puerto Rico," denied him due process. Petitioner claims he did not realize that counsel had omitted these issues from his argument to the parole panel until after the hearing was concluded. This assertion is patently absurd. Petitioner was represented by counsel and assisted by an interpreter throughout the hearing; he had the benefit of contemporaneous translation of all the proceedings. Petitioner cannot now be heard to complain that he missed something in the course of the proceedings.

Broadly and charitably construed, this assertion also may be an attempt by petitioner to show that his counsel's representation was so constitutionally deficient as to constitute ineffective assistance of counsel.[18] A review of this claim begins with the presumption that the assigned lawyer was competent; the burden rests with petitioner to demonstrate that there has been a

16. Respondents' Exhibit C.

17. *See Moody v. Daggett,* 429 U.S. 78, 87, 97 S.Ct. 274, 278–79, 50 L.Ed.2d 236 (1976) (due process does not require a revocation hearing until the parole violator is taken into custody pursuant to the executed warrant). The Commission has the authority to conduct a hearing as soon as a warrant is lodged as a detainer after a dispositional record review by the Regional Commissioner. 28 C.F.R. § 2.47(b) (1987). The revocation hearing may be scheduled to coincide with the initial parole hearing on the new sentence, as here, or upon release from the new sentence, whichever comes first. 28 C.F.R. § 2.47(b)(i) (1987). Here the Commissioner appropriately sought to combine the dispositional revocation hearing with the initial parole hearing on July 3, 1985. Even assuming the Parole Commission's dispositional review of the detainer was untimely, absent prejudice or bad faith on the Commission's part, the appropriate remedy was not a writ of *habeas corpus* but a writ of manda-

mus to compel compliance with the statute. *Heath v. U.S. Parole Comm'n,* 788 F.2d 85 (2nd Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 443, 93 L.Ed.2d 391 (1986). In any event, there was no prejudice or bad faith in this instance.

18. The Supreme Court has never held that due process entitles parolees to counsel at a revocation proceeding. *See Morrissey v. Brewer,* 408 U.S. at 489, 92 S.Ct. at 2604; *Gagnon v. Scarpelli,* 411 U.S. 778, 790, 93 S.Ct. 1756, 1763–64, 36 L.Ed.2d 656 (1972) (need for counsel at parole or probation revocation hearing to be determined on a case-by-case basis). Nonetheless, federal parolees are by statute entitled to appointed counsel for such hearings. 18 U.S.C. § 4214(a)(2)(B). This statutory right surely entitled petitioner to effective assistance of counsel. *See McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970) (the right to counsel has long been recognized to be the right to effective assistance of counsel).

constitutional violation. *See United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). In *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), the Supreme Court held the test for ineffective assistance of counsel is "[f]irst, the [petitioner] must show that counsel's performance was deficient ... [and] second, the [petitioner] must show that the deficient performance prejudiced the defense." Additionally, *Strickland* requires the movant to "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The reviewing court "must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* If it is more efficient to address an ineffective assistance of counsel claim on the ground of lack of prejudice, then the court should do so. *Id.* 466 U.S. at 697, 104 S.Ct. at 2069–70.

Petitioner has specified the omissions of counsel alleged to have been the result of deficient performance, namely, the failure to raise two issues petitioner deemed important to the revocation proceedings. Petitioner has wholly failed, however, to show that such omission prejudiced his cause. Specifically, petitioner does not show that the result of the revocation hearing would have been different had counsel raised these issues. Indeed, the omitted issues are manifestly frivolous; their assertion in the hearing would not have affected the outcome. Therefore, petitioner's ineffective assistance claim must fail. Moreover, these issues constitute challenges to the validity of his conviction and were not proper subjects to be raised at the parole hearing. *A fortiori*, therefore, counsel's exercise of his judgment not to raise them did not violate the constitutional standards for effective assistance as outlined in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Accordingly, as petitioner has failed to show that he was denied due process or the effective assistance of counsel at this parole hearing, respondents' motion as to this claim is granted.

G. *The parole guidelines discriminate against high seas crimes*

Petitioner's final ground for relief is that he was denied equal protection and meaningful parole consideration owing to the offense severity rating he was assigned for committing an offense on the high seas. As noted above, substantive decisions concerning the granting or denial of parole are statutorily committed to the absolute discretion of the Parole Board and will be reviewed only for an abuse of discretion. *Zaccour v. Baer*, 629 F.Supp. at 261; *Garcia v. Neagle*, 660 F.2d at 988. The Court may consider claims that the commission has failed to follow pertinent constitutional, statutory, or regulatory provisions or that the regulations themselves are illegal. *Zaccour* at 261. Petitioner does not raise these issues; rather he asserts that because his mandatory release date is less than his parole guideline range, the guideline range and guidelines are illegal. Mandatory release on a five year sentence occurs at 40 months, the two-thirds completion date. 28 C.F.R. § 2.53(a) (1987). However, where, as here, a sentence is to be followed by a parole violator term the mandatory release date may be extended. In any event, the Commission is not *required* to release prisoners serving five or more years at the two-thirds mark, *Garcia*, 660 F.2d at 991, although it usually does so. The Commission retains significant discretion concerning parole and need not rely on a date determined with reference to the length of the sentence. *Id.* Thus petitioner's claim that he must be released after 40 months of service is without merit.

Where, as here, parole is denied, the Commission must sufficiently identify the factors preventing release. *Smith v. Hambrick*, 637 F.2d 211 (4th Cir.1980); *Franklin v. Shields*, 569 F.2d 784 (4th Cir.1977), *aff'd in part and rev'd in part on reh'g*, 569 F.2d 800 (4th Cir.1978) (en banc), *cert. denied*, 435 U.S. 1003, 98 S.Ct. 1659, 56 L.Ed.2d 92 (1978). The Commission has done so. Petitioner was sentenced

to five years for an offense involving approximately 22,000 pounds of marijuana. Under 28 C.F.R. § 2.20, Chapter 9(B) § 911(a) (1987), a marijuana offense involving more than 20,000 pounds is rated as a Category Six severity. Combined with an individual with a salient factor score of six, the reparole guideline range is 52 to 64 months.[19] Since petitioner would be mandatorily released on the combined new sentence and the parole violator term after the service of 59 months, the decision of the Parole Commission to continue petitioner's incarceration to expiration is one falling within the guideline range for similar offenses and not abusive. The Commission clearly informed petitioner of the reasons for this decision.[20] The petitioner has wholly failed to show that the Commission abused its discretion ordering petitioner to serve his sentence until expiration and without parole. Thus, the respondents' motion as to this claim is granted.

## IV. *Conclusion*

As outlined above, the Court finds no merit in petitioner's allegations that he is entitled to a writ of *habeas corpus* pursuant to 28 U.S.C. § 2241. An oral hearing is not required because the motion, files and records of the case conclusively show that on the undisputed material facts, petitioner is not entitled to relief. 28 U.S.C. § 2255. *See Fontaine v. United States*, 411 U.S. 213, 93 S.Ct. 1461, 36 L.Ed.2d 169 (1973); *Kaufman v. United States*, 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969). Accordingly, the Court grants respondents' motion and dismisses this cause with prejudice.

An appropriate order shall issue.

---

**19.** *See* text accompanying notes 10–12, *supra.* **20.** *See* Respondents' Exhibits E and F.