**Robert H. MYERS, Petitioner,**

v.

**R.S. PETERSON, Respondent.**

**No. CV 86–6587–E.**

United States District Court,
D. Oregon.

May 4, 1989.

Steven T. Wax, Federal Public Defender, Portland, Or., for petitioner.

Dave Frohnmayer, Atty. Gen., Scott McAlister, Asst. Atty. Gen., Salem, Or., for respondent.

## OPINION

PANNER, Chief Judge.

Petitioner Robert H. Myers brings this habeas petition under 28 U.S.C. § 2254 against respondent R.S. Peterson, superintendent of the Oregon State Correctional Institution (OSCI). Petitioner contends that the state should have credited him for time served in Iowa custody on Iowa charges after his escape from OSCI and before his return to Oregon custody. Respondent moves to dismiss the petition, contending that petitioner has procedurally defaulted on his claims and has failed to state a claim. I grant respondent's motion to dismiss the petition.

## BACKGROUND

On April 28, 1978, petitioner was sentenced to twenty years in the custody of the Oregon State Department of Corrections for kidnapping, robbery, conspiracy, burglary, unauthorized use of a motor vehicle, and criminal trespass. The Oregon State Parole Board (Parole Board) set petitioner's release for November 27, 1983. On January 26, 1982, petitioner escaped. On February 20, 1983, he was arrested in Iowa on Iowa charges. Oregon filed a detainer. On June 28, 1983, Oregon filed a second detainer on an escape charge. The escape charge was later dropped. Petitioner remained in Iowa custody on Iowa charges until May 18, 1986, when he was returned to Oregon.

On July 14, 1986, the Parole Board rescinded petitioner's November 27, 1983 parole release date. The Parole Board added 670 days to petitioner's parole release date, based on his time on escape and in Iowa custody. On July 31, 1986, the Parole Board denied administrative review.

On September 26, 1986, petitioner's attorney, Gary Babcock, Oregon Public Defender, filed a petition in the Oregon Court of

Appeals for review of the Parole Board's action. However, Babcock erroneously sought review of the Parole Board's July 31 denial of review, rather than the July 14 final order setting petitioner's parole release date. On December 10, 1986, the Oregon Court of Appeals dismissed, holding that the Parole Board's July 31 order denying administrative review was not reviewable. The court also denied Babcock's motion to amend the petition to substitute the Parole Board's July 14 order, which would have been reviewable if Babcock had filed a timely petition. There is no indication in the record, and petitioner does not contend, that he petitioned the Oregon Supreme Court for review of the Oregon Court of Appeals' dismissal.

While the judicial review action was pending at the Oregon Court of Appeals, petitioner filed for habeas relief in Marion County Circuit Court. The trial court dismissed the habeas petition because petitioner had an available legal remedy, the pending judicial review action. The Oregon Court of Appeals affirmed the trial judge's dismissal without opinion, and the Oregon Supreme Court denied the petition for review. *Myers v. Peterson,* 85 Or.App. 428, 736 P.2d 629, *review denied,* 303 Or. 699, 740 P.2d 1212 (1987).

After the Oregon Court of Appeals had dismissed petitioner's attempt to obtain judicial review of the Parole Board's action, he again petitioned for habeas relief, alleging that the dismissal of his judicial review action allowed him to seek habeas relief because there were no available legal remedies. The trial court dismissed based on res judicata. The Oregon Court of Appeals affirmed without opinion and the Oregon Supreme Court denied the petition for review. *Myers v. Peterson,* 91 Or.App. 723, 756 P.2d 699, *review denied,* 306 Or. 527, 761 P.2d 928 (1988) (Lent & Linde, JJ., would allow).

## DISCUSSION

Petitioner contends that he is entitled to credit for time served in Iowa custody on Iowa charges after February 20, 1983, when Oregon first lodged a detainer in Iowa. Respondent contends that petitioner has procedurally defaulted on his claims and that he not entitled to relief on the merits.

## I. Procedural Default

Petitioner contends that his attorney's failure to petition for review of the Parole Board action was ineffective assistance of counsel that excuses his procedural default. Respondent argues that petitioner was not constitutionally entitled to representation and that his attorney's failure to petition for review does not excuse the procedural default.

### A. *Standard*

■ Procedural default occurs when a petitioner fails to raise an available constitutional claim in state court, and a state procedural rule then bars the petitioner from raising it. *Tacho v. Martinez,* 862 F.2d 1376, 1378 (9th Cir.1988). A procedural default will not prevent a federal court from hearing a habeas claim "unless the last state court rendering a judgment in the case ' "clearly and expressly" ' states that its judgment rests on a state procedural bar." *Harris v. Reed,* 489 U.S. 255, ——, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989) (extending adequate and independent state ground doctrine of *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), to habeas cases) (citations omitted).

■ To excuse procedural default, a petitioner must show both cause and prejudice. "[C]ause for a procedural default on appeal ordinarily requires a showing of some external impediment preventing counsel from construing or raising the claim." *Murray v. Carrier,* 477 U.S. 478, 492, 106 S.Ct. 2639, 2647, 91 L.Ed.2d 397 (1986). Attorney error will not excuse procedural default on appeal unless the error amounts to ineffective assistance of counsel. *Id.* Even if a petitioner can show ineffective assistance of counsel, the petitioner usually must present such a claim to the state courts before contending a federal habeas action that the ineffective assistance

caused the procedural default. *Id.* at 488–89, 106 S.Ct. at 2645–46.

■ To show prejudice, the petitioner must demonstrate that the errors actually and substantially disadvantaged him. *Id.* at 493–95, 106 S.Ct. at 2648–49. If the prejudice to the petitioner is extraordinarily great, the federal habeas court may grant the writ despite a failure to show cause for procedural default. *See Roberts v. Arave,* 847 F.2d 528, 530 n. 3 (9th Cir.1988).

## B. *Discussion*
### 1. Procedural Default

■ First, I conclude that petitioner has procedurally defaulted on his claim. His attempt to obtain judicial review of his claim was "clearly and expressly" rebuffed on procedural grounds by the Oregon Court of Appeals. *See Harris v. Reed,* 109 S.Ct. at 1039. Petitioner did not attempt to obtain judicial review of that decision from the Oregon Supreme Court. Under the newly announced standard of *Harris v. Reed,* petitioner has procedurally defaulted on this claim.

### 2. Cause and Prejudice

Because petitioner has procedurally defaulted, I must examine whether his default can be excused under the cause and prejudice standard. *See Carrier,* 477 U.S. at 485–86, 106 S.Ct. at 2643–44. Petitioner contends that he has demonstrated cause because he received ineffective assistance of post-conviction counsel on his attempted petition for judicial review to the Oregon Court of Appeals from the Parole Board order. Respondent argues that petitioner has no constitutional right to counsel, so his ineffective assistance of counsel claim must fail.

Oregon grants appointed counsel for persons petitioning for review of a Parole Board order. ORS 144.337. Petitioner contends that his statutory right to counsel is meaningless unless that counsel is effective. Petitioner cites *Wilson v. United States,* 554 F.2d 893, 894 (8th Cir.), *cert. denied,* 434 U.S. 849, 98 S.Ct. 158, 54 L.Ed.2d 117 (1977), which held that in a 28 U.S.C. § 2255 case, the petitioner's attor-

ney's failure to advise of the right to petition for certiorari on direct appeal violates the right to effective assistance of counsel guaranteed by Federal Rule of Criminal Procedure 44(a), 18 U.S.C. § 3006A, and an Eighth Circuit rule of court. In dictum, the court added that the attorney's failure *"may* also violate constitutional rights to effective assistance of counsel and due process of law." *Id.* (emphasis added). Because *Wilson* was decided before several of the Supreme Court decisions discussed below, I find it unpersuasive, particularly in light of its tentative phrasing.

In *Giarratano v. Murray,* 847 F.2d 1118, 1121–22 (4th Cir.), *cert. granted,* 488 U.S. 923, 109 S.Ct. 303, 102 L.Ed.2d 322 (1988), the court did hold that state post-conviction petitioners were entitled to effective assistance of counsel. However, the court relied on the petitioner's status as a death-row inmate and on his claim for access to the courts under *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). Assuming *Giarratano* is good law and would be followed by the Ninth Circuit, it is distinguishable because petitioner here is not on death-row and does not rely on *Bounds.*

Petitioner also cites *Orantes–Hernandez v. Meese,* 685 F.Supp. 1488 (C.D.Cal.1988) (INS has affirmative duty to provide detainees with legal assistance); and *Guerrero–Guerrero v. Clark,* 687 F.Supp. 1022, 1030 n. 18 (E.D.Va.1988) (statutory right to counsel at federal parole hearings under 18 U.S.C. § 4214(a) entitles petitioner to effective assistance of counsel). Those decisions are not on point because they concern federal rights granted by federal statutes.

Although the Supreme Court has not squarely rejected the proposition advanced by petitioner, it has at least strongly hinted that it would do so if confronted with the issue. In *Pennsylvania v. Finley,* 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987), the Court held that state post-conviction petitioners were not entitled to the procedures required by *Anders v. California,* 386 U.S. 738, 744, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493 (1967) (when an attorney representing indigent defendant on direct

appeal determines that the appeal is wholly frivolous, the attorney must so advise the court, request permission to withdraw, and supply a brief citing anything in the record that could support an appeal).

The *Finley* Court stated:

[W]e reject respondent's argument that the *Anders* procedures should be applied to a state-created right to counsel on postconviction review just because they are applied to the right to counsel on first appeal that this Court established in *Douglas* [*v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963)]. Respondent apparently believes that a "right to counsel" can have only one meaning, no matter what the source of that right. But the fact that the defendant has been afforded assistance of counsel in some form does not end the inquiry for federal constitutional purposes. Rather, it is the source of that right to a lawyer's assistance, combined with the nature of the proceedings, that controls the constitutional question. In this case, respondent's access to a lawyer is the result of the State's decision, not the command of the United States Constitution.

481 U.S. at 556, 107 S.Ct. at 1993. Similarly, in *Wainwright v. Torna*, 455 U.S. 586, 587–88, 102 S.Ct. 1300, 1301–02, 71 L.Ed.2d 475 (1982), the Court held that because a federal habeas petitioner had no federal constitutional right to counsel on discretionary state appeals, "he could not be deprived of the effective assistance of counsel by his retained counsel's failure to file the application timely." Both *Finley* and *Torna* show that the Court is not likely to accept petitioner's contention that he is entitled to effective assistance of counsel in state post-conviction proceedings merely because a state statute grants him a right to counsel.

At least one reported federal appellate decision addresses a similar issue. In *Tillett v. Freeman*, 868 F.2d 106 (3d Cir.1989), a federal habeas petitioner claimed that he was denied effective assistance of counsel during state post-conviction proceedings. He alleged that his post-conviction attorney failed to file a brief, call witnesses, or dispute the trial court's jurisdiction. Pennsylvania by statute requires that petitioners be represented by appointed counsel in state post-conviction proceedings. The petitioner had failed to exhaust this claim before filing his federal petition, although he also brought several properly exhausted claims. The district court dismissed this claim, together with the petitioner's exhausted claims, for bringing a "mixed" petition. *See Rose v. Lundy*, 455 U.S. 509, 521–22, 102 S.Ct. 1198, 1204–05, 71 L.Ed.2d 379 (1982).

The appellate court reversed, holding that the claim of ineffective assistance of post-conviction counsel did not arise under the Constitution or laws of the United States, but was "at most one arising under Pennsylvania law." 868 F.2d at 108. Because the claim arose under state law, it was not cognizable in a federal habeas petition. *Id.* (citing 28 U.S.C. § 2241(c)(3) (for writ to issue, the prisoner must be in custody "in violation of the Constitution or laws or treaties of the United States")). The district court therefore should not have dismissed the exhausted federal claims for failure to exhaust a claim outside federal habeas jurisdiction.

Finally, in *United States ex rel. DuQuaine v. Greer*, No. 88–C–0006, 1989 WL 20830, 1989 U.S.Dist.LEXIS 2394 (N.D.Ill. Mar. 7, 1989), the court held that a state post-conviction petitioner had no federal constitutional right to effective assistance of counsel, despite his state statutory right to counsel. The court was not enthusiastic about this holding, noting that "a convicted individual's fortunes in post-conviction proceedings hinge on the competence and commitment of state-appointed counsel." *Id.* at 4. The court even suggested that the petitioner might be better off if the state did not appoint counsel and forced the petitioner "to rely on his own understanding of the law." *Id.* at 5 n. 1.

█ I conclude that petitioner here had no federal constitutional right to effective assistance of counsel on his petition for review of the Parole Board order, despite his state statutory right to counsel. Be-

cause he has no federal constitutional right, he cannot show cause for his procedural default on this claim. I also conclude that petitioner has not suffered such extraordinary injustice that I may overlook his procedural default.

## II. The Merits of Petitioner's Claims

Despite my holding on procedural default, I will address the merits of petitioner's claims. Petitioner contends that he is entitled to credit for time served in Iowa on Iowa charges toward his Oregon parole release date. Petitioner relies on Oregon Administrative Rules (OAR) 291–100–013(2)(d) and (e), which provide:

> Once an inmate has been sentenced, the sentence will begin to run and continue to run unless the inmate escapes. Upon escape, the time will stop running.

> The sentence of a person who escaped on or after November 1, 1981, will resume running when it is visually confirmed that the inmate is in custody even though he/she may be serving a sentence in another institution or county jail.

Respondent contends that these rules are not relevant because they deal with sentences, not parole release dates. I agree. The rules distinguish between the running of an inmate's sentence and the inmate's parole release date. Only petitioner's parole release date is at issue here.

Respondent contends that rather than OAR 291–100–013(2), OAR 255–35–020 applies here. The version of that rule in effect at the time of petitioner's escape provided:

> In establishing the parole release date for *a person convicted of escape*, time on escape shall not count toward the completion of the prison term. The time on escape prior to the parole release date shall be added to the prison term.

(Emphasis added.) The rule was later amended, deleting the reference to a conviction for escape:

> In establishing the parole release date for *a person who has escaped from a state correctional facility*, time on escape shall not count toward the completion of the prison term. The time on

escape prior to the parole release date shall be added to the prison term.

(Emphasis added.) Petitioner contends that the version of OAR 255–35–020 in effect when he escaped does not apply to him because he was never convicted of escape. He further argues that the amended version of the rule, which does not require an escape conviction, cannot apply retroactively to him. However, assuming that the rule in effect at the time of his escape applies, I do not agree with petitioner that the rule requires the result he seeks. Just because the rule does not specifically cover escapees who are not convicted of escape does not mean that petitioner can receive credit for the time he served in Iowa on Iowa charges.

■ Even if petitioner is correct in his construction of the administrative rules, I conclude that the applicable statute, ORS 137.370(2)(a), precludes the result he seeks here. That statute provides that "for the purpose of computing the amount of sentence served the term of confinement includes only (a) The time that the person is confined by any authority after the arrest for the crime for which the sentence is imposed." The sentence just quoted is the result of a 1981 amendment to the statute's previous version, ORS 137.370(3). The former statute provided that "no time during which a person sentenced to imprisonment in the penitentiary or the correctional institution is voluntarily absent from the penitentiary or correctional institution can be counted as part of the term for which such person was sentenced."

The legislature amended ORS 137.370(3) to clarify that an escapee who is in custody in another jurisdiction after capture can receive credit for time served while awaiting return to Oregon custody. Under the previous version of the statute, there was uncertainty whether a captured escapee in custody in another jurisdiction was nevertheless "voluntarily absent" from Oregon custody.

During testimony before the Oregon Legislature on January 27, 1981, on proposed amendments to ORS 137.370, Multnomah County Circuit Judge John C. Beat-

ty, Jr., testified that "it would be desirable to provide that the time to be counted is when the person is confined on that particular charge." See Petitioner's Response, Unnumbered Exhibit. Also on January 27, 1981, Thomas G. Toombs, deputy administrator of the Corrections Division, testified that the bill amending the statute should state that "an inmate, after being apprehended and ... back in custody, even though in custody in another jurisdiction, including out-of-state" can receive credit for time served because the inmate is no longer "voluntarily absent." Toombs did not discuss the effect of an escapee's custody in another jurisdiction on other charges.

On February 11, 1981, Judge Beatty reiterated that the bill should specify that "credit for time served be tied to arrest on that particular charge." On June 9, 1981, Judge Beatty stated that he supported the bill as amended.

As it now appears, ORS 137.370(2)(a) incorporates Judge Beatty's concerns. An escapee receives credit for time "that the person is confined by any authority after the arrest *for the crime for which the sentence is imposed.*" (Emphasis added.) Here, petitioner seeks credit toward his Oregon sentence for time served in Iowa after his arrest on Iowa charges. His Iowa custody was not "for the crime for which the sentence [was] imposed," but rather for new Iowa charges.

The statute itself and the legislative history shows that petitioner's interpretation of ORS 137.370(2)(a) is incorrect. The testimony of Judge Beatty and Toombs shows that the legislature intended to give escapees credit for time served in other jurisdictions on Oregon charges while awaiting return to Oregon custody. The statute prevents an escapee from serving "dead time" in another jurisdiction and avoids any question about the definition of "voluntarily absent." Here, petitioner is not trying to avoid serving "dead time." Rather, he seeks the opposite of "dead time"—"double time." If petitioner had his way, his time in Iowa custody on Iowa crimes would become a concurrent sentence, counting both toward his Iowa convictions and toward his previous Oregon convictions. I do not think that the legislature intended to be quite so charitable toward escapees serving time in other jurisdictions on new charges.

Petitioner also argues, correctly, that Oregon presumes that sentences run concurrently with any sentence previously imposed unless the sentencing judge expressly orders otherwise. ORS 137.370(4). However, the presumption of concurrence applies to Oregon sentences imposed *after* sentences imposed by any court in any jurisdiction. It does not apply to the opposite situation, when another jurisdiction's sentence is imposed after an Oregon sentence. Even if my interpretation of ORS 137.370(4) is incorrect, ORS 137.370(2)(a), which applies specifically to escapees, would control.

## CONCLUSION

Petitioner has not shown cause to excuse his procedural default. Even if he had, his petition fails on its merits. Respondent's motion to dismiss the petition is granted.