### III.

For the foregoing reasons, we affirm the judgment of the district court dismissing petitioner's petition for a writ of habeas corpus.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2001 FED App. 0370P (6th Cir.)
File Name:  01a0370p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————

BENJAMIN URBINA,
     *Petitioner-Appellant,*

     *v.*

MARYELLEN THOMS, Warden,
     *Respondent-Appellee.*

No. 00-5464

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 00-00003—Henry R. Wilhoit, Jr., District Judge.

Submitted:  August 9, 2001

Decided and Filed:  October 17, 2001

Before:  KEITH, KENNEDY, and BATCHELDER, Circuit
Judges.

————————

### COUNSEL

**ON BRIEF:**  Thomas Lee Gentry, ASSISTANT UNITED STATES ATTORNEY, Lexington, Kentucky.  Benjamin Urbina, Lexington, Kentucky, pro se.

## OPINION

KENNEDY, Circuit Judge.  Petitioner Benjamin Urbina filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, claiming that the United States Parole Commission (USPC) violated his Fifth Amendment due process rights by exceeding its jurisdiction to change his regular parole status to special parole status while he, a deported alien, was out of the country.  The district court dismissed petitioner's writ, sua sponte, without prejudice. Petitioner now appeals that dismissal.  For the reasons stated below, we affirm the judgment of the district court dismissing petitioner's claims.

### I.

On December 10, 1985, petitioner was sentenced to a period of seven years in prison and five years probation to run consecutively for knowingly, willfully, and unlawfully conspiring to distribute heroin, possessing heroin, and distributing heroin, in violation of 21 U.S.C. §§ 846 and 841(a)(1).  As a condition of his probation, petitioner, an alien, was ordered to leave the country and not to return.

On November 7, 1986, petitioner was sentenced on an additional count to serve three and a half years to run concurrently with his December 10, 1985 sentence. Petitioner was also sentenced to a ten-year term of special parole to run consecutively to his imprisonment.  Petitioner was ordered that if he was deported, he was not to re-enter the United States, but that if he did re-enter, he was to notify his probation officer within three days.

Petitioner was released on April 22, 1988 to the Immigration and Naturalization Service (INS), allegedly on regular parole.  On May 7, 1988 the INS deported petitioner to Mexico while he was still on regular parole status. According to a USPC warrant, petitioner's special parole term

his period of regular parole to be tolled when he left the country.  Thus, we affirm the holding of the district court that "as petitioner has not set forth any factual allegations supporting his implication that tolling was intended, this claim is insufficiently pled to go forward.  This court cannot, on the absence of asserted facts, determine that the sentencing court intended to toll petitioner's period of regular parole." (J.A. #3.)

Petitioner also claims that the USPC is without jurisdiction to initiate a change in parole status while a deported alien is out of the country.  The district court cited *Guerrero-Guerrero v. Clark*, 687 F. Supp. 1022 (E.D. Va. 1988), for the proposition that the USPC does in fact have jurisdiction to address a deported alien's special parole status.  In *Guerrero-Guerrero*, the district court concluded that the USPC had jurisdiction to revoke a deported alien's special parole term. *Id.* at 1027.  There, the court explained that:

> To hold otherwise would be to give parolees the key to the removal of their parole restrictions . . . all they would have to do to defeat parole is to leave the United States. This is nonsense.  The term "jurisdiction" in the statute governing jurisdiction of the United States Parole Commission is used in the sense that a parolee's conduct is subject to Commission supervision until the expiration of the sentence. . . . And this is true wherever the parolee may travel.

*Id.* Certainly the district court was correct in concluding that if the USPC has jurisdiction to revoke special parole status, it must also have jurisdiction to initiate special parole status while an alien is deported.  We therefore affirm the district court's holding that the USPC had jurisdiction to activate petitioner's special parole status after the completion of his prison time and general parole period, while petitioner was on deportation status.

court assumed, for purposes of argument, that petitioner was released on regular parole status. Despite apparent conflicts in petitioner's pro se pleadings, it seems clear that petitioner was in fact released on regular parole. Petitioner was sentenced to a period of seven years imprisonment in 1985 but was released in 1988--as outlined above, special parole follows the term of imprisonment, while regular parole entails release before the end of the term. *Evans*, 78 F.3d at 263. Thus, petitioner was released on regular parole.

Petitioner claims that when he was deported, while on regular parole status, his period of regular parole was tolled until he re-entered the United States. Thus, he claims that he was on regular parole status when he illegally re-entered the country sometime prior to his November 1997 arrest. The Sixth Circuit has addressed the issue of tolling for an excluded alien's supervised release status. We agree with the district court that case law addressing the tolling of supervised release periods can be applied equally to periods of parole. In *United States v. Isong*, 111 F.3d 428 (6th Cir. 1997), the court held that a district court has authority to provide that a period of supervised release be tolled while a deported alien is out of the country. *Isong* relied heavily on the particular language of the sentencing court's sentence, however, to conclude that the court had in fact intended to toll the period of supervised release.[2] The court did not hold that all periods of supervised release are tolled when a defendant leaves the country, nor did it create any presumption in favor of tolling. Rather, the court imposed a fact-specific analysis to determine the intent of the sentencing court. In the present case, petitioner has offered no evidence whatsoever to indicate that the USPC intended

---

[2]The sentence in *Isong* included the following language: "in the event defendant is permitted, at any time in the future, to re-enter the United States, defendant shall report to the nearest United States Probation Office within 48 hours of re-entry into this country, at which time, [the] period of supervised release shall be resumed." *Id.* at 429. The court concluded that "[t]he period of supervised release could only 'resume[]' upon Mr. Isong's return if suspended during his absence." *Id.* at 430.

began on December 17, 1989, after he was deported and while he was in Mexico.

On November 5, 1997, petitioner was arrested but released for drug related offenses in Chicago, after he had illegally re-entered the United States. On March 30, 1998, the USPC issued an arrest warrant for petitioner. On June 1, petitioner was arrested. On April 28, 1999, the USPC held petitioner's parole revocation hearing and determined that petitioner had violated the terms of his special parole. On May 19, 1999, the USPC issued a notice of action in which it: (1) revoked petitioner's special parole; (2) declared that no time spent on special parole could be credited toward completion of petitioner's sentence; (3) converted petitioner's special parole term to regular parole with eligibility for parole to be determined pursuant to 18 U.S.C. § 4208(a); (4) determined that petitioner's mandatory release was to full term less 180 days under 18 U.S.C. § 4164 and subject to 28 C.F.R.§ 2.52; and (5) directed petitioner to continue to a presumptive parole after the service of 65 months on the "new" sentence until November 2, 2003, at which time he would be released subject to an INS detainer, or, if the detainer was not exercised, then he would be released to an approved plan.

Petitioner alleges, pro se, that the USPC exceeded its jurisdiction when it converted his regular parole to special parole and that any parole violation punishment should have been governed by the terms of regular parole, not special parole. Petitioner filed an appeal to the National Appeals Board, which was denied, but petitioner admits that he did not argue in that appeal the specific complaint alleged here. Petitioner then filed his § 2241 habeas petition in the district court. The district court held that it could not conclude that the USPC intended petitioner's regular parole status to be tolled while he was out of the country, that the USPC had jurisdiction over petitioner's special parole status while petitioner was out of the country, and that petitioner had

failed to exhaust his administrative remedies.[1]  The district court dismissed the petition without prejudice.

## II.

As the district court correctly noted, because petitioner has filed a pro se petition and appeal, his pleadings are held to a less stringent standard than those prepared by an attorney. *Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972).  In ruling on a motion to dismiss, the allegations in a pro se petition must be taken as true and construed in favor of the petitioner. *Malone v. Colyer*, 710 F.2d 258 (6th Cir. 1983).  This court reviews de novo the legal conclusions of the district court in a habeas corpus decision. *United States v. Peterman*, 249 F.3d 458, 461 (6th Cir. 2001).

According to the USPC, petitioner's special parole term began on December 17, 1989, after he was deported and while he was in Mexico.  Petitioner claims that he was released on regular parole and that his period of regular parole was tolled during the time that he was out of the country.  Thus,

---

[1] Although the district court held that petitioner did not exhaust his administrative remedies as required before filing a § 2241 petition for habeas relief in the district court, we decline to rule on the issue.  As the district court correctly explained, the USPC has specific regulations for appealing parole decisions to the National Appeals Board, 28 C.F.R. § 2.26, and judicial review of a parole commission decision may occur only after exhaustion of available administrative remedies. *Smith v. Thompson*, 937 F.2d 217, 219 (5th Cir. 1991).  Petitioner admits that he did not present his current claims before an administrative tribunal.  Citing *Smith v. Thompson*, the Sixth Circuit has stated that, "the Bureau of Prisons should be given the opportunity to consider the application of its policy to [petitioner's] claim before the matter is litigated in the federal courts." *Taylor v. United States*, 62 F.3d 1418 (6th Cir. 1995) (Table) (unpublished opinion).  Although it appears that petitioner failed to exhaust his administrative remedies as is required, that claim was not raised by the government on appeal and is therefore waived. *See Brindley v. McCullen*, 61 F.3d 507, 509 (6th Cir. 1995) (holding that the plaintiffs, by not briefing the question, had waived their appeal of the district court's decision not to sever their legal from their equitable civil right claims).

petitioner argues that when he illegally re-entered the United States and was arrested in November 1987, he was still serving his period of regular parole.  In contrast, the USPC claims that petitioner completed his period of regular parole, that his special parole period began in December 1989, and that, therefore, petitioner was in the process of serving the ten-year special parole term at the time of his arrest in Chicago.

Special parole was created in 1970 as an additional penalty for all drug offenses and was mandatory in all such cases until the Sentencing Reform Act replaced it with "supervised release."  Special parole is governed by 21 U.S.C. § 841, which Congress repealed in 1984, but which still applies to drug crimes committed before November 1, 1987. *Dolfi v. Pontesso*, 156 F.3d 696, 697 (6th Cir. 1998) (citations omitted).  Special parole differs from regular parole in three respects:

> [F]irst, special parole follows the term of imprisonment, while regular parole entails release before the end of the term; second, special parole was imposed, and its length selected, by the district judge rather than by the Parole Commission; third, if the conditions of special parole are violated, the parolee is returned to prison to serve the entire special parole term, and receives no credit for his time spent in non-custodial supervision, or "street time."

*Evans v. United States Parole Comm'n*, 78 F.3d 262, 263 (7th Cir. 1996).  Because the USPC concluded that petitioner had violated his special parole, it ordered petitioner to an additional term of imprisonment equal to ten years, the entire length of his special parole term, even though he had already completed almost eight years of that special parole term.  Petitioner thus would prefer to have been sentenced for a violation of regular parole.

As a preliminary matter, the district court concluded that petitioner had not conclusively established the fact that he was originally released from prison on regular parole status. (J.A. #3.)  Because petitioner is pro se, however, the district